IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 2, 2011 Session

## JASON CALVERT v. STATE OF TENNESSEE

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Davidson County**
**No. 2006-C-1862      J. Randall Wyatt, Jr., Judge**

_____

**No. M2008-00426-SC-R11-PC - Filed April 28, 2011**

_____

We granted the defendant's application for permission to appeal in this post-conviction proceeding to determine whether the defendant received ineffective assistance of counsel in conjunction with his guilty pleas to multiple sex offenses, because his counsel did not inform him about the mandatory lifetime community supervision consequence of some of his convictions. After a hearing, the post-conviction court denied relief upon its determination that the defendant's legal representation was competent; the Court of Criminal Appeals affirmed. We hold that the defendant has demonstrated by clear and convincing proof that (1) his counsel's performance fell below the objective standard of reasonableness because counsel did not advise him that, in addition to his effective ten-year sentence, a mandatory sentence of community supervision for life was a consequence of his guilty pleas; and (2) there was a reasonable probability that, but for counsel's failure to properly inform him, the defendant would not have pled guilty and would have insisted on going to trial. We therefore reverse the judgment of the Court of Criminal Appeals and remand this matter to the original trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the**
**Court of Criminal Appeals Reversed; Case Remanded**

CORNELIA A. CLARK, C.J., delivered the opinion of the Court, in which JANICE M. HOLDER, GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Dumaka Shabazz, Nashville, Tennessee, for the appellant, Jason Calvert.

Robert E. Cooper, Jr., Attorney General and Reporter; Gordon W. Smith, Associate Solicitor General; J. Ross Dyer, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Lisa Naylor, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

BACKGROUND

Jason Calvert ("Defendant") was indicted in July 2006 on six counts of sexual battery by an authority figure, Tenn. Code Ann. § 39-13-527 (2006); two counts of providing pornography to a minor, id. § 39-17-911 (2006); two counts of rape, id. § 39-13-503 (2006); four counts of solicitation of a minor, id. § 39-13-528 (2006); and two counts of attempted aggravated sexual battery, id. § 39-13-504 (2006). In response to these charges, Defendant pled guilty on November 14, 2006, to three counts of sexual battery by an authority figure; two counts of providing pornography to a minor; two counts of rape; and three counts of solicitation of a minor.[1] Pursuant to the plea agreement, Defendant was sentenced as a Range I standard offender to three years on each count of sexual battery by an authority figure; nine months on each count of providing pornography to a minor;[2] ten years on each count of rape (as a violent 100% offender); and one year on each count of solicitation of a minor. All the sentences were to be served concurrently for an effective sentence of ten years. As a condition of Defendant's plea agreement, all but nine months of the ten-year term were suspended, to be served on probation. In setting forth the possible punishment and the terms of the plea bargain agreement, Defendant's "Petition to Enter Plea of Guilty" ("plea petition") makes no reference to lifetime community supervision.

Two attorneys jointly represented Defendant in the trial court proceedings that culminated in the guilty pleas. The plea petition and the transcript from the plea hearing reflect that Defendant originally intended to plead guilty in Counts 5 and 6 to aggravated sexual battery instead of rape. However, while Defendant was still engaged in his plea colloquy and the trial court was confirming his sentences, the trial court realized that the proposed sentence was illegal because aggravated sexual battery is an offense for which

---

[1] The transcript from the plea hearing indicates that Defendant entered a best interest plea on one of the solicitation counts. The written Petition to Enter Plea of Guilty reflects that three counts of sexual battery by an authority figure and the two counts of attempted aggravated sexual battery were to be dismissed. The document does not specify the disposition of Count 15, which charged solicitation of a minor, but the prosecutor announced during the plea hearing that Count 15 would be dismissed.

[2] The transcript from the plea hearing states that the sentence for one count of providing pornography to a minor would be a probation period of eleven months, twenty-nine days. However, the judgment form in the record states that the sentence for that count was nine months served in the county jail, with no reference to probation.

-2-

probation is not available.[3] The transcript indicates that a pause took place while defense counsel conferred with Defendant and the prosecutor. One of Defendant's lawyers then indicated to the court a desire to amend the offense from aggravated sexual battery to rape. The trial judge addressed Defendant: "it's still your voluntary decision to plead guilty to the rape charge as it's now going to have to be instead of [a]ggravated [s]exual [b]attery. Do you understand that?" Defendant answered, "Yes." On the judgment forms ultimately completed for both counts of rape, the box is checked next to the statement, "Pursuant to 39-13-524 the defendant is sentenced to community supervision for life following sentence expiration." However, the trial court did not inform Defendant about any such lifetime community supervision requirement.[4] Defendant accepted the terms of the plea petition and served his nine months in jail accordingly.

After his release, Defendant was charged with a violation of his probation. In August 2007, the trial court found Defendant in violation of the terms of his probation and ordered him to serve the entirety of his original ten-year sentence in confinement.[5]

Defendant filed a petition for post-conviction relief on November 9, 2007, and then filed an amended petition on January 18, 2008. The amended petition alleged that Defendant received ineffective assistance of counsel in violation of his rights pursuant to the United States Constitution and the Constitution of the State of Tennessee. Defendant's amended petition enumerated fourteen alleged deficiencies in counsel's performance: pressuring Defendant into taking the plea, informing Defendant that he could not receive a fair trial, using semantics and vague terms, pressuring Defendant to enter a plea under time constraints, failing to inform Defendant of all the consequences of pleading guilty, failing to investigate the facts of the case adequately, failing to inform Defendant of a reasonable trial defense, failing to inform Defendant of the facts and evidence, failing to give Defendant full and adequate advice of his rights, failing to give Defendant full and adequate advice about available strategies or defenses, failing to develop a reasonable trial strategy or defense, failing to file necessary pretrial motions, failing to give sufficient advice for Defendant to

---

[3] See Tenn. Code Ann. § 40-35-303(a) (2006).

[4] Tennessee Code Annotated section 39-13-524(a) (2006) provides that, "[i]n addition to the punishment authorized by the specific statute prohibiting the conduct, any person who, on or after July 1, 1996, commits a violation of . . . § 39-13-503 [setting forth the offense of rape] . . . shall receive a sentence of community supervision for life."

[5] At the hearing on Defendant's petition for post-conviction relief, the trial court incorporated into the record the transcripts from the hearings on Defendant's probation violations and the trial court's order. However, the hearing transcripts and order have not been included in the appellate record.

make an informed and conscious decision whether to plead guilty or go to trial, and failing to consult with Defendant during proceedings leading up to the guilty pleas.

The post-conviction court conducted a hearing on Defendant's amended petition on February 1 and 5, 2008.[6]  Defendant and one of his defense lawyers from the trial court proceedings ("Lead Counsel") testified at this hearing.

Defendant testified that, counting meetings at both the county jail and the courthouse, he met with his lawyers six or more times during the case.  They provided him with discovery materials and went over the materials with him.  Defendant was aware that he "was facing a lot of years" if a jury convicted him on the multiple charges. However, Defendant testified that his lawyers did not talk with him about going to trial, and that one of his lawyers told him that he would not get a fair trial because he was gay.  Defendant testified that a motion to reduce bond was the only pretrial motion filed.  He also stated that, until he read the transcript from the plea hearing, he was not aware that the burden of proof in criminal proceedings required the State to prove his guilt, and he did not understand the right of confrontation meant that witnesses would actually appear in the courtroom, rather than on videotape. Defendant testified that, if his attorneys had discussed going to trial and explained his rights at trial, that information "definitely would have made [him] make a different decision" about whether to accept or reject the plea agreement.

Concerning events on the day of the plea hearing, Defendant testified there was "a lot of confusion that was going on" regarding the proper classification of the various charges and the length of the sentences.  When the trial court explained that amending the rape charge to aggravated sexual battery would render Defendant ineligible for probation, Defendant testified that he said to "go ahead and go with rape" because he was "completely exhausted" and "just ready to end that day."  Although Defendant admitted that he answered "yes" when the trial court asked if he understood the proceedings, Defendant testified that he "was in a fog at the time" because he "c[ould]n't believe [he was] pleading guilty to these charges" and because his "mother was kind of hysterical in the back of the courtroom."  The plea hearing transcript contains no indication that Defendant ever communicated his confusion to the court or that his mother made any reaction that disrupted the proceedings.

Defendant also testified that he felt time constraints on the day of the plea.  During his meetings with counsel, court personnel repeatedly interrupted and said that the court was ready for them or that they only had a certain number of minutes left.  These interruptions made Defendant feel that he was "very rushed" and faced a "now or never" situation in

---

[6] The same judge presided over both the guilty plea hearing and the hearing on the amended petition for post-conviction relief.

deciding whether to plead. However, Defendant also testified that his plea hearing "had been a long day" and "really seemed to drag on."

Defendant testified that he was not made fully aware of the nature and consequences of his pleas. Although Defendant recalled entering a best interest plea, he did not understand the definition of such a plea and felt that counsel "was getting aggravated with" him for asking questions about this kind of plea. While Defendant knew that his name would be placed on the sex offender registry, he did not realize that he would be classified as a "violent" sex offender. He testified that he was told probation would cost approximately $45 a month, but the actual costs turned out to be approximately $345 per month. Defendant also testified that, when he expressed his reluctance to plead guilty to rape, counsel said the differences in charges were "just semantics," such that Defendant felt like he was "aggravating the Court."

Defendant testified that, just before he finished serving his nine-month jail term, he met with his probation officer and learned for the first time that, after serving the rest of his ten-year sentence on probation, there would be "an additional fifteen years of automatic probation." Although this testimony was not clarified during the hearing and Defendant continued to describe this additional sentence as "probation," Defendant was evidently referring to the mandatory community supervision sentence imposed on any defendant convicted of rape.[7] See Tenn. Code Ann. § 39-13-524(a) (2006). While this community supervision is for life, a defendant may petition the sentencing court for release from that supervision after fifteen years. Id. § 39-13-525(a) (2006). After Defendant testified about what the probation officer had told him about community supervision following probation, Defendant's attorney asked, "If you would have known about that[,] how would that have affected your decision?" Defendant answered, "I think that would have made differences [sic] in my decision, as well."[8] In other portions of the transcript, Defendant's testimony indicates that knowing about the community supervision, in conjunction with other factors raised in his amended petition, would have changed his decision to plead guilty.[9]

---

[7] The community supervision requirement also applies to convictions for aggravated rape, aggravated sexual battery, and rape of a child. Tenn. Code Ann. § 39-13-524(a). The statute has subsequently been amended so that the requirement also applies to convictions of aggravated rape of a child if the offense took place after July 1, 2010. Id. § 39-13-524(a)(2) (2010).

[8] Defendant's use of the phrase "as well" reflects the fact that his post-conviction attorney asked him about the effect of various aspects of trial counsel's representation on Defendant's decision to plead guilty rather than go to trial.

[9] Defendant's testimony at the post-conviction hearing included the following:

(continued...)

Defendant explained that, as soon as he was released on probation, he began to contact attorneys about the available remedies for undoing his guilty plea. He "kept being told there was nothing [he] could do" until after he was incarcerated again, when he first learned about the availability of post-conviction relief. Also, he decided not to appeal the trial court's

_____

[9](...continued)

Q:    Now, based on the different things that we discussed that you've shared with us today, not fully talking about trial, not really knowing the full magnitude of the type of reporting and money that you would have to pay out, had you known all of those things prior to taking a plea, do you think that you might have made a different choice?

A:    I do think so. I think I lacked information, not just with, like, what trial would be like or what would go on. And with the different things with probation that there were extra things that I was unaware of, as well. The cost, *the extra fifteen years*. So I think all of those would – I would have made a different decision to go to trial.
. . . .
Q:    And how would [violent sex offender status] have affected your decision to plea or go to trial?

A:    I think that – I think that would have changed my decision. There's a lot of the individual things, like, after each of these individual things that you've asked and you've said, how would that have affected your decision. And each individual one, it may have changed my decision. Just a few of them, together, definitely would have changed my decision.

Q:    So you're saying, kind of, the totality or the accumulation of some of these things–

A:    A lot of the different things that I've mentioned about, like, cost being seven times what I was originally told about, you know, *ten years probation is what I signed for, but then being told there's a conditional fifteen after that*, the whole difference with it being violent that I didn't know about, each of those individually, I don't know, but altogether, yes. But when it comes to, like, talking about actual trial and if we had gone to trial, that we didn't talk about any of that, because I guess – because we weren't planning on it, but with the way the – what had to be proved, with the possibility of cross examination, because I thought, you know, they just showed videos, the – that there was different pretrial motions that could have been used that we never discussed. And I think that stuff, just that alone, definitely would have made me make a different decision. I'd have gone to trial with just that alone. But I think, you know, with all of that information, I'd have definitely, absolutely gone to trial.

(Emphases added).

On cross-examination, the State's attorney asked Defendant, "it's your position that you wouldn't have pled guilty but for – if you'd known you'd be on lifetime supervision[,] right?" Defendant answered, "There were a lot of different reasons that –," before the State's attorney asked an unrelated question.

-6-

decision finding him in violation of his probation because he did not want to go back on probation under the terms of his original sentence.

Lead Counsel testified that he was the primary attorney representing Defendant.[10] He testified that he and his co-counsel met with Defendant at least seven or eight times prior to Defendant's guilty plea, including at least four meetings at the jail. They reviewed with Defendant the charges (including the legal definition of "rape") and the possible sentences, and they provided and reviewed with Defendant the written discovery materials, including a statement that Defendant had made to a police detective. Lead Counsel did not file a motion to suppress the statement because he did not think he could plausibly argue that Defendant was in custody at the time of the statement. Lead Counsel testified that he and co-counsel went to the victims' home, where the family denied permission to speak with the victims.

When asked about Defendant's sexual orientation, Lead Counsel testified that he actually discussed his concerns about how the jury might react to Defendant's conduct around minors (e.g., providing them with access to pornography). Lead Counsel felt these concerns were relevant, regardless of Defendant's sexual orientation.

Concerning preparation for trial, Lead Counsel testified that he and co-counsel discussed Defendant's "options," including the right to testify. He could not recall if Defendant had made a firm decision about whether to testify because a trial date had not been set at the time of the plea hearing, but he recalled a broader discussion that included the potential problems if Defendant testified, including the inculpatory things he had said in a prior statement to the police.[11] Both lawyers also discussed the anticipated testimony of the child witnesses. Lead Counsel testified that any available defenses (e.g., consent, lack of penetration) "would be very, very difficult" to establish.

Lead Counsel stated that he and co-counsel discussed a variety of potential plea agreements with Defendant and that, when reviewing the plea petition with him, Defendant objected to pleading guilty to the charges of rape. Therefore, Lead Counsel attempted to enter the pleas to these counts as aggravated sexual battery, but told Defendant in advance that it was not a probatable offense. Once Lead Counsel explained during the pause in the

---

[10] However, Lead Counsel testified that his co-counsel took the lead in representing Defendant on the probation violation. None of Defendant's allegations of ineffective assistance pertained to counsel's representation on the probation violation.

[11] These inculpatory admissions included Defendant's statement that he had touched one victim's penis and placed it in his mouth.

plea hearing that the trial court could not sentence Defendant to probation for aggravated sexual battery, Defendant then agreed to plead guilty to rape. Lead Counsel testified that the nine-month incarceration provided for in Defendant's plea agreement "was significantly less than he would have gotten at trial, certainly," and that, "[if] he'd have been convicted at trial, he would have gotten significantly, significantly more than nine months, in my opinion."

Concerning the consequences of Defendant's plea, Lead Counsel testified that he told Defendant that sex offender probation "is a very difficult probation, it is very intense." He specifically explained the sex offender registry, the requirement to stay away from children, and the modification of his living arrangements. Lead Counsel also testified that it is difficult to tell a client what to expect from sex offender probation. When asked if he discussed with Defendant the community supervision requirement, Lead Counsel testified, "I don't believe we did. . . . I can't be certain of that, but I don't recall doing that."

By written order filed February 15, 2008, the post-conviction court denied Defendant's amended petition, rejecting each allegation of ineffective assistance. Regarding Defendant's allegation that counsel failed to inform him of all the consequences of accepting the plea agreement, the court found that counsel explained to Defendant the advantages and disadvantages of accepting the plea and the sentence associated with the plea, explained sex offender probation and the sex offender registry, and informed Defendant that sex offender probation would be quite strict. The court found that, although counsel had not explained "every detail" of sex offender probation to Defendant, Lead Counsel "believed that [Defendant's] predominant consideration was the amount of jail time he could face, rather than the cost of fees for Sex Offender Probation." The court concluded that Defendant was adequately informed of the consequences of accepting the plea.

The post-conviction court also found that counsel explained to Defendant the terms of the plea agreement and discussed the advantages and disadvantages of pleading guilty versus proceeding to trial. Counsel informed Defendant he could reject the offer and proceed to trial. The court found that counsel did not tell Defendant that he could not receive a fair trial, but instead provided a full and adequate explanation of the trial process, including available defenses, likely testimony of other witnesses, and evidence (such as Defendant's admissions) the State might introduce. Finally, the post-conviction court found that counsel explained the rights Defendant would waive by entering the plea. Defendant was also informed of these rights by the court before entering his plea, and Defendant represented to the court that he understood these rights and agreed to waive them.

The Court of Criminal Appeals affirmed the post-conviction court's judgment that Defendant's legal representation had not been ineffective. Calvert v. State, No. M2008-00426-CCA-R3-PC, 2009 WL 890891, at *7 (Tenn. Crim. App. Mar. 26, 2009). The

-8-

intermediate appellate court held that defense counsel's failure to advise Defendant of the community supervision requirement was not deficient because "counsel's silence regarding 'the various consequences of being convicted of a sex offense' does not amount to deficient performance." Id. at *5 (quoting Bailey v. State, No. M2001-01018-CCA-R3-PC, 2002 WL 215657, at *3 (Tenn. Crim. App. Feb. 8, 2002)). The Court of Criminal Appeals also credited the post-conviction court's finding that Lead Counsel had testified that Defendant's primary concern in accepting the plea agreement was avoiding a long period of incarceration. Id.

We granted Defendant's application for permission to appeal to determine whether he received ineffective assistance of counsel in relation to his guilty plea.

## STANDARD OF REVIEW

We treat claims of ineffective assistance of counsel in a petition for post-conviction relief as mixed questions of law and fact. Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). To prevail on a claim for post-conviction relief, the petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2006); Tenn. Sup. Ct. R. 28 § 8(D)(1); Grindstaff, 297 S.W.3d at 216. The post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. Grindstaff, 297 S.W.3d at 216; State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We review de novo the post-conviction court's application of the law to its factual findings, according no presumption of correctness to its conclusions of law. Grindstaff, 297 S.W.3d at 216; Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009).

## ANALYSIS

### I. Ineffective Assistance of Counsel

Pursuant to the Sixth Amendment of the United States Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." See also Tenn. Const. art. I, § 9 ("[I]n all criminal prosecutions, the accused hath the right to be heard by himself and his counsel."). In Hill v. Lockhart, 474 U.S. 52, 58 (1985), the United States Supreme Court held that the two-part test outlined in Strickland v. Washington, 466 U.S. 668 (1984) was applicable to challenges of guilty pleas based on ineffective assistance of counsel. To succeed on a claim that his or her legal representation has been constitutionally inadequate, a criminal defendant "must establish both that counsel's performance was deficient and that the deficiency prejudiced the defense." Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (citing Strickland v. Washington, 466 U.S. at 688, and

Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). A defendant's "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

The first prong of this two-prong test is deficient performance. This prong requires the petitioner to prove that "counsel's representation fell below an objective standard of reasonableness" and overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. The second prong of the test is prejudice. This prong requires the petitioner to prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The definition of "reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. When ineffective assistance of counsel is alleged in the context of a guilty plea, the prejudice analysis

> focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Hill, 474 U.S. at 59; see also Grindstaff, 297 S.W.3d at 216-17.

## II. Defendant's Allegations

Defendant argues in his brief to this Court three separate grounds in support of his claim that he received ineffective assistance of counsel in entering his guilty plea: (1) counsel's failure to inform him about the community supervision sentence; (2) counsel's inadequate preparation and advice concerning trial strategy, leaving Defendant confused and feeling compelled to take the plea bargain; and (3) counsel's pressuring Defendant to plead guilty.[12] We agree with the Court of Criminal Appeals that Defendant is not entitled to relief

---

[12] We note that a defendant's allegation that he has been "pressured" or "coerced" into pleading guilty is typically placed in the context of a claim that his plea was involuntary. See, e.g., Hicks v. State, 983 S.W.2d 240, 246-48 (Tenn. Crim. App. 1998) (addressing defendant's post-conviction claim that his attorneys coerced him into pleading guilty, rendering his plea involuntary). In this case, Defendant argued to the post-conviction court that his plea was not knowing and voluntary because he received ineffective assistance of counsel.

(continued...)

-10-

on the latter two grounds. Defendant has failed to establish the factual allegations of confusion or pressure by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). Rather than indicating confusion, the record instead supports the post-conviction court's findings that counsel explained to Defendant the charges and potential sentences as well as the terms of the plea agreement, which Defendant agreed to accept in open court despite subjectively disagreeing that his conduct met the legal definition of "rape." Nothing in the transcript from the plea hearing suggests that Defendant was "in a fog" or that his mother was acting hysterically in the courtroom. Similarly, the record does not establish that counsel pressured Defendant into accepting the guilty plea. Instead, the record supports the post-conviction court's findings that counsel met with Defendant on multiple occasions to discuss Defendant's options, including the right to proceed to trial and testify on his behalf. Counsel also discussed concerns about how the jury might react to Defendant's behavior around minors, but those concerns were relevant regardless of Defendant's sexual orientation. Defendant's claim that he felt rushed at the plea hearing is directly contradicted by his own testimony that his plea hearing "really seemed to drag on" and he pled guilty "just to end that day."

Therefore, the crux of this case is the legal significance of counsel's failure to inform Defendant of the mandatory lifetime community supervision sentence triggered by his convictions of rape (or aggravated sexual battery, to which Defendant initially intended to plead guilty). Clear and convincing evidence in the record—i.e., the testimony of both Defendant and Lead Counsel—establishes that, before Defendant pled guilty, counsel did

[12](...continued)

As noted above, on a similar claim, the United States Supreme Court held that the appropriate analysis for evaluating ineffective assistance of counsel claims in the guilty plea context is the two-pronged Strickland test. Hill, 474 U.S. at 58-59. In Hill, the Supreme Court denied post-conviction relief because, even if counsel's erroneous advice amounted to deficient performance, the defendant had not adequately alleged prejudice. Id. at 60. Specifically, the defendant had not alleged "that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial" or that he "placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty." Id. In this case, we follow the Supreme Court's lead in analyzing Defendant's challenge to his guilty plea based on ineffective assistance of counsel.

We acknowledge that our law provides another avenue for a similarly situated defendant to obtain post-conviction relief. As discussed post, we have already held that a defendant's failure to be informed about the lifetime community supervision sentence renders a guilty plea unknowing and involuntary. See Ward v. State, 315 S.W.3d 461, 477 (Tenn. 2010). Therefore, applying Ward, a court may alternatively determine that a defendant did not enter a knowing and voluntary plea because legal counsel failed to advise of lifetime community supervision and the trial court failed to cure this omission. In Ward, we did not reach the question of ineffective assistance of counsel. Id. at 464 n.1, 477.

not inform Defendant of any community supervision sentence to commence after the completion of probation. Therefore, we proceed with the two-pronged Strickland inquiry.

A. Deficient Performance

In Grindstaff, this Court similarly undertook an examination of whether defense counsel's performance was deficient in conjunction with advising the defendant about the sentence resulting from a guilty plea. Specifically, the defendant was charged with five counts of aggravated sexual battery. He agreed to plead guilty with no agreement as to his sentence. His lawyer testified at the post-conviction hearing that he had told the defendant that, if the trial court sentenced him to no more than eight years, he would be eligible for an alternative sentence, including probation. The defendant pled guilty with the understanding that it was possible for him to be put on probation and not spend any time in confinement. As noted above, however, aggravated sexual battery is not eligible for a probationary sentence. The post-conviction court denied relief, and we reversed, finding that the defendant had established both prongs of the Strickland test. Grindstaff, 297 S.W.3d at 222.

In addressing the first prong, we initially acknowledged that "[t]here are no specific guidelines for determining whether trial counsel's performance was deficient other than that the assistance of counsel must meet 'an objective standard of reasonableness.'" Id. at 220 (quoting Strickland, 466 U.S. at 688). We then turned to the American Bar Association Standards for Criminal Justice for guidance, emphasizing Standard 4-8.1(a):

> Defense counsel should, at the earliest possible time, be or become familiar with *all of the sentencing alternatives available* to the court and with community and other facilities which may be of assistance in a plan for meeting the accused's needs. *Defense counsel's preparation should also include familiarization with* the court's practices in exercising sentencing discretion, *the practical consequences of different sentences*, *and the normal pattern of sentences for the offense involved*, including any guidelines applicable at either the sentencing or parole stages. *The consequences of the various dispositions available should be explained fully by defense counsel to the accused.*

Id. (emphases added) (quoting ABA Standards for Criminal Justice, Defense Function Standard 4-8.1 (3d ed. 1993), available at http://www.americanbar.org/publications/ criminal_justice_section_ archive/crimjust_standards_dfunc_blk.html).

In Grindstaff, we also turned to federal cases for additional guidance. In United States v. Morris, defense counsel's performance was found deficient where he failed to recognize

-12-

that the prosecutor's estimate under the federal sentencing guidelines was wrong. 470 F.3d 596, 603 (6th Cir. 2006). In Moss v. United States, the Sixth Circuit Court of Appeals acknowledged that defense counsel's failure to "provide professional guidance . . . regarding . . . sentence exposure prior to a plea may constitute deficient assistance." 323 F.3d 445, 474 (6th Cir. 2003). In Magana v. Hofbauer, the Sixth Circuit found that defense counsel's performance "fell below an objective standard of reasonableness" because he provided erroneous advice concerning sentence exposure. 263 F.3d 542, 549 (6th Cir. 2001). Taking this guidance into account, we held in Grindstaff that defense counsel's performance was deficient because he did not tell the defendant of the mandatory nature of his sentences and that he was ineligible for an alternative sentence. 297 S.W.3d at 221.

In addition to our explication in Grindstaff of what constitutes deficient performance in conjunction with advising a criminal defendant about the consequences of a guilty plea, we find guidance in a recent case by the United States Supreme Court. In Padilla v. Kentucky, __ U.S. __, 130 S. Ct. 1473 (2010), the Court considered a post-conviction claim of ineffective assistance of counsel following a legal immigrant's plea of guilt to a drug charge. Defense counsel did not inform his client that the conviction carried with it the likelihood of deportation; indeed, defense counsel told his client that he "did not have to worry about immigration status since he had been in the country so long." Id. at 1478 (internal quotation marks omitted). The defendant subsequently claimed that, had he known that his guilty plea could lead to his deportation, he would not have pled guilty and would have insisted on a trial.

The Court acknowledged that deportation was "not, in a strict sense, a criminal sanction," but also recognized that "deportation is a particularly severe penalty." Id. at 1481 (internal quotation marks omitted). The Court then determined that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." Id. at 1482. And, in the case before it, the Court determined that

> the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for Padilla's conviction. Padilla's counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal for [most] controlled substances convictions . . . . *This is not a hard case in which to find deficiency: The consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect.*

Id. at 1483 (emphasis added) (internal citation omitted). That is, defense counsel's performance on behalf of his client Padilla was deficient because the relevant law set forth in succinct, clear, and explicit terms a significantly adverse consequence of the proposed plea, about which counsel failed to inform his client.

Finally, our analysis of whether defense counsel's failure to inform Defendant about the community supervision requirement amounted to deficient performance implicates our recent decision in Ward v. State, 315 S.W.3d 461 (Tenn. 2010). In Ward, the defendant pled guilty to aggravated sexual battery. During the plea colloquy, the trial court did not inform the defendant that his conviction resulted in a mandatory sentence of community supervision for life. The defendant subsequently sought post-conviction relief on the grounds that his plea was not made knowingly, intentionally, and voluntarily. The post-conviction court denied relief, and the Court of Criminal Appeals affirmed that ruling. We reversed the lower court's judgment and granted relief, concluding that community supervision was "an additional part of a defendant's sentence" and "an undesirable and punitive consequence" of the guilty plea. Id. at 474-75. We explained that the lifetime community supervision requirement is "punitive in effect, requiring an offender to regularly report to a parole officer who is granted wide discretion in imposing supervisory requirements, and to pay a monthly fee." Id. at 474. We described as "significant" the requirement of "lifetime supervision and the attendant consequences placed on an individual after having served his or her entire sentence of incarceration and/or regular parole." Id. Because of the trial court's constitutional duty to ensure that a criminal defendant understands "the sentence that he will be forced to serve as the result of his guilty plea and conviction," Blankenship v. State, 858 S.W.2d 897, 905 (Tenn. 1993), and because the trial court had failed to discharge that duty, we held that the defendant's guilty plea to aggravated sexual battery was not knowingly, intelligently, and voluntarily made. Ward, 315 S.W.3d at 464, 477. Accordingly, we remanded the case to the original trial court to vacate the judgment of conviction so that the defendant could withdraw his guilty plea and stand trial on the original charge. Id. at 477. Although the Ward defendant also alleged ineffective assistance of counsel, our holding rendered that issue moot and pretermitted. Id. at 464 n.1, 477.

This case presents that issue squarely before us. Lead Counsel admitted that he did not believe either he or co-counsel informed Defendant about the community supervision requirement. The record of the plea hearing also reflects that the trial court did not inform Defendant of the community supervision requirement. Reviewing this case without the benefit of our decisions in Grindstaff or Ward, and without the benefit of the Supreme Court's decision in Padilla, the Court of Criminal Appeals agreed with the trial court that counsel's failure to inform Defendant about the mandatory lifetime community supervision consequence of his plea did not constitute deficient performance. Calvert, 2009 WL 890891, at *5 (citing Adkins v. State, 911 S.W.2d 334, 350 (Tenn. Crim. App. 1994)).

-14-

In light of Grindstaff, Ward, and Padilla, we now hold that a lawyer's failure to advise his or her client about the mandatory lifetime community supervision sentence, where the client is considering a plea to one or more of the relevant offenses, is deficient performance. As we pointed out in Ward, our community supervision statute, Tenn. Code Ann. § 39-13-524, sets forth the community supervision requirement as "an additional part of a defendant's *sentence*" for certain specifically enumerated offenses. 315 S.W.3d at 474 (emphasis added). The statute succinctly, clearly, and explicitly describes community supervision as a mandatory part of the sentence. The community supervision requirement is punitive and carries "significant" consequences, including the payment of a supervision fee and regular reporting to a parole officer who has the discretion to impose conditions of supervision. Id. Although Defendant's counsel could have determined this significant and punitive consequence of Defendant's plea from the plain language of the community supervision statute, counsel did not inform Defendant about this requirement.[13] Cf. Padilla, 130 S. Ct. at 1483. Defense counsel's performance was, therefore, deficient.

## B. Prejudice

Having determined that Defendant has established the first of the two-prong Strickland test for ineffective assistance of counsel, we turn now to the second prong, which focuses on whether counsel's constitutionally deficient performance affected the outcome of the plea process. Hill, 474 U.S. at 59. In other words, we must determine whether Defendant has established by clear and convincing evidence a reasonable probability that, but for defense counsel's failure to inform him of the mandatory lifetime community supervision aspect of his sentence, he would have declined to plead guilty. We begin by noting that, in its discussion of Defendant's decision to accept the plea agreement, the post-conviction court found that Lead Counsel "believed that [Defendant's] predominant consideration was the amount of jail time he could face." The Court of Criminal Appeals accredited this finding. Calvert, 2009 WL 890891, at *5. However, after careful review of Lead Counsel's testimony, we conclude that the post-conviction court's finding is contrary to the preponderance of the evidence. We have not located any testimony concerning Lead

---

[13] The community supervision for life sanction extended Mr. Calvert's probationary/supervision period by at least five years and nine months. Mr. Calvert received a ten-year sentence with all but nine months suspended. Thus, Mr. Calvert faced a probationary period of nine years and three months. In accordance with Tennessee Code Annotated section 39-13-524(c), his community supervision for life would have commenced "upon the expiration of [his] term of imprisonment." However, section 39-13-525(a) provides that persons on community supervision for life cannot petition to be released from community supervision until they have been on community supervision for at least fifteen years. Mr. Calvert would have been under community supervision for only nine years and three months at the end of his original probationary period. Thus, he would not have been eligible to request to be released from community supervision for an additional five years and nine months.

-15-

Counsel's beliefs about Defendant's priorities in accepting the plea agreement. In response to a question, Lead Counsel testified only that the nine-month sentence in the plea agreement was "significantly less" than the sentence Defendant likely would have received if he had been convicted of the same charges at trial. Lead Counsel also testified that he told Defendant about some of the requirements of sex offender probation, but did not recall telling Defendant about the community supervision sentence after the completion of probation. Nothing in this testimony indicates Lead Counsel's belief concerning what information Defendant considered most important in deciding to accept the plea agreement. Nor does it indicate Lead Counsel's belief concerning the importance Defendant would have assigned to information that counsel failed to communicate to him.

Additionally, the post-conviction court did not acknowledge Defendant's own testimony when specifically asked about how the community supervision sentence would have affected his decision to plead guilty. Granted, Defendant testified that several aspects of his representation led him to regret his plea, but that testimony is attributable to the way that Defendant's post-conviction attorney phrased some of the questions on direct examination. Certain questions lumped together various aspects of defense counsel's representation that Defendant found objectionable and asked Defendant about their collective effect on his decision to plead guilty. However, there is one instance in the direct examination when Defendant's post-conviction attorney specifically asked how knowing about the community supervision sentence would have affected his decision to plead guilty. Defendant responded, "I think that would have made differences [sic] in my decision, as well." Furthermore, Defendant testified that he began contacting attorneys about undoing his guilty pleas as soon as he was released on probation, rather than waiting until he was found in violation of his probation and ordered to serve the balance of his sentence in prison.[14]

Based on Defendant's uncontradicted testimony, we believe that Defendant has carried his burden of demonstrating prejudice resulting from counsel's deficient performance. That is, Defendant has established a reasonable probability that, had counsel informed him about the mandatory lifetime community supervision sentence that would follow after his probation, he would not have pled guilty. Under these circumstances, Defendant is entitled to post-conviction relief.

---

[14] We reiterate that the trial court also failed to inform Defendant of the community supervision requirement at the guilty plea hearing.

## CONCLUSION

Defendant has shown by clear and convincing evidence that his trial counsel failed to inform him of the mandatory sentence of community supervision for life resulting from his guilty pleas to rape. We hold that trial counsel's omission fell below the range of competence required in criminal cases, satisfying the first prong of the Strickland test for ineffective assistance of counsel. We also hold that the record establishes a reasonable probability that but for counsel's inadequate advice, Defendant would not have pled guilty and would have insisted on going to trial, thereby satisfying the second prong of the two-prong Strickland test. Because Defendant was denied the effective assistance of counsel in entering his guilty pleas, he is entitled to withdraw his pleas and stand trial on the original sixteen charges. We therefore reverse the judgment of the Court of Criminal Appeals and remand this matter to the original trial court, where Defendant's judgments of conviction shall be vacated and Defendant shall be allowed to withdraw his guilty pleas and stand trial on all original charges, if necessary. The costs of this appeal are taxed to the State of Tennessee.

_____
CORNELIA A. CLARK, CHIEF JUSTICE