IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 7, 2026

## JOHNNY B. BROOKS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-24-60  Kyle C. Atkins, Judge**
_____

### No. W2025-00549-CCA-R3-PC
_____

The Petitioner, Johnny B. Brooks, appeals the Madison County Circuit Court's denial of post-conviction relief from his convictions for driving under the influence ("DUI"), eighth offense, driving on a revoked license due to a DUI, and a violation of the open container law. On appeal, the Petitioner argues that he received ineffective assistance of counsel. Upon review, we affirm the judgment of the post-conviction court.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which J. ROSS DYER, and MATTHEW J. WILSON, JJ., joined.

William J. Milam, Jackson, Tennessee, for the appellant, Johnny B. Brooks.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General and Joshua R. Gilbert, Assistant Attorney General (pro hac vice); Jody S. Pickens, District Attorney General; and Shaun A. Brown, Deputy District Attorney General, for the appellee, State of Tennessee.

### OPINION

At the January 10, 2023 guilty plea hearing, the Petitioner stipulated to the following facts:

> On April 1, 2021, Deputy Rick Brooks initiated a traffic stop on the Petitioner after seeing him repeatedly weave across the center line of traffic. When Deputy Brooks spoke to the Petitioner, he noticed that the Petitioner's speech was "extremely slurred, his eyes were red and watery . . . He seemed incoherent and unable to appropriately respond to questions." Deputy

Brooks also noticed a strong odor of alcohol on the Petitioner's breath and his person. Inside the Petitioner's car, Deputy Brooks saw two open containers of beer in the cup holders of the center console. The Petitioner admitted that he had consumed two beers prior to driving. A subsequent license check revealed that the Petitioner's driving license had been revoked due to a prior DUI conviction in Rutherford County.

Deputy Brooks then requested that the Petitioner exit the vehicle to perform standardized field sobriety tests. Upon exiting, the Petitioner was "very unsteady on his feet." After walking to the rear of the vehicle, the Petitioner refused to perform the field sobriety tests and instructed Deputy Brooks to "just take me to the jail." Deputy Brooks asked the Petitioner whether he would submit to a blood or breath test, which the Petitioner refused. Deputy Brooks then placed the Petitioner under arrest for driving under the influence. Following the arrest, Deputy Brooks conducted a search of the vehicle and also discovered a mostly empty bottle of gin.

At the guilty plea hearing, the Petitioner agreed to plead guilty to DUI, eighth offense, driving on a revoked license due to a DUI, and violation of the open container law, with the length of the sentence to be determined by the court. As part of his plea, the State agreed that the Petitioner would be sentenced as a Range II offender, even though he was a Range III offender due to prior habitual motor vehicle offenses.

During the guilty plea colloquy, the Petitioner stated that he fully understood the terms of his plea agreement. The Petitioner acknowledged that he was waiving his constitutional rights by pleading guilty and that he was entering his plea freely, voluntarily, and knowingly. He also acknowledged that he was entering a guilty plea because it was "the best course of action for [him], taking everything into consideration." In addition, the Petitioner agreed that he was given "plenty of time" to talk to trial counsel and was satisfied with the representation.

The trial court explained that as a Range III offender, a DUI, eighth offense carries a sentence of 10 to 15 years. However, according to the plea agreement, the Petitioner would be sentenced as a Range II offender, with a sentence range of 6 to 10 years. The Petitioner acknowledged that the trial court would make a sentencing determination at a later date and that he would not be able to negotiate that sentence. The court and trial counsel further explained the sentence range to the Petitioner as follows:

[THE COURT]: He needs to understand that this sentence, as of right now, is just a blind plea and the range has not been determined.

[TRIAL COUNSEL]: Yes, sir.

[THE COURT]: So I'm going to determine the range on the day of sentencing. If [the Petitioner] gets into any trouble between now and then, if he can't pass a drug screen when he comes in here on the day we sentence him, then -- that includes alcohol -- then he's probably not going to be sentenced as a Range II offender. He needs to understand that.

[TRIAL COUNSEL]: Do you understand what the Judge is saying? You know how we talked about that this was being reduced from a Range III to a Range II?

[THE PETITIONER]: Yes, sir.

[TRIAL COUNSEL]: And that was the only part of the agreement that we had an agreement on -- the only part of the plea that we had an agreement on.

[THE PETITIONER]: Yes, sir.

[TRIAL COUNSEL]: Do you understand that?

[THE PETITIONER]: uh-huh.

[TRIAL COUNSEL]: So if you get arrested or do anything illegal, or you come in here and test positive for drugs and/or alcohol, that Range II is gone and more likely -- well, the Range II is probably gone and you will be sentenced in your proper range, which more likely than not is higher than Range II.

[THE PETITIONER]: Yes, sir.

[TRIAL COUNSEL]: So we're looking at 6 to 10 swing to a 10 to 15.

At the conclusion of the hearing, the Petitioner stated that he understood his guilty plea and that he did not have any questions for the court. The court then accepted the plea, finding that the Petitioner's plea of guilty was "freely, voluntarily, and intelligently made. There's a factual basis for the plea. He has had the advice of an attorney with whom he's satisfied." In his pro se petition for relief, the Petitioner stated that he was sentenced to

eight years at thirty-five percent to be served in the Tennessee Department of Correction.[1] The Petitioner did not file a direct appeal.

On March 11, 2024, the Petitioner filed a pro se petition for post-conviction relief, alleging that he was denied effective assistance of counsel based on trial counsel's repeated assurance that the Petitioner would receive only 150 days in jail if he pled guilty. The Petitioner claimed that, despite multiple consultations with trial counsel, he did not understand the applicable penalty range or the discovery in his case. The Petitioner further alleged that counsel instructed him to "go along with whatever the Judge said" during the plea hearing, causing him to respond, "robotically through the proceeding as [defense counsel] directed, and parrot[ing] back every response that the presiding judge expected of him." The Petitioner also asserted that he had suffered a heart attack the day before the guilty plea hearing and was taking medication that left him "mentally disoriented and cognitively disconnected from the proceedings." According to the Petitioner, trial counsel knew or should have known that he was "not mentally capable of making life-altering decisions" under those circumstances. The post-conviction court subsequently appointed counsel; however, no amended petition was filed.

**Post-Conviction Hearing.** At the April 7, 2025 post-conviction hearing, the Petitioner testified that trial counsel led him to believe he would receive a 150-day sentence and did not inform him that, as a Range II offender, he faced a potential sentence of 6 to 10 years. He said that trial counsel advised him to remain silent during the plea hearing and to agree with everything the trial court said, assuring him that he would receive a sentence of 150 days if he entered a guilty plea. The Petitioner acknowledged that he was not given a plea offer from the State and that he ultimately entered a blind plea. The Petitioner further testified that he was confused about the proceedings on the day he entered his plea and that he had not discussed the applicable sentencing range with counsel prior to arriving in court, other than a brief conversation in the hallway where trial counsel reiterated that he would receive a 150-day sentence. The Petitioner also testified that he did not review the State's discovery materials prior to entering his plea and that he did not understand the evidence against him. The Petitioner stated that had he known he faced a 6 to 10 year prison sentence, he would not have entered the guilty plea.

Trial counsel testified that he could not recall how many times he met with the Petitioner but stated that the Petitioner "could come into [his] office any time he wanted to." He testified that he reviewed discovery with the Petitioner and advised him to accept a plea agreement. Trial counsel said that the plea agreement was a "blind plea" with the stipulation that the Petitioner would be sentenced as a Range II offender rather than a Range

---

[1] The record in this case does not include the judgments of the underlying convictions or a transcript of the sentencing hearing.

III offender. Trial counsel stated that, during discussions of the discovery and plea agreement, he had no concerns that the Petitioner lacked understanding and noted that they "got along fine until judgment day, so to speak." When asked whether he had ever made any representations to the Petitioner regarding the amount of time he would receive if he entered a guilty plea, trial counsel stated,

> I told [the Petitioner] that he was looking at potentially 100 percent and on -- on the DUI charge; it was his eighth offense. And I told him I would do my best to convince [the trial court] not to send him to prison, maybe thinking or trying to explore whether or not that 100 percent actually meant you had to go to prison or maybe if you violated your probation you would get 100 percent at that point. That was my conversation with him. That was what I was hoping to accomplish with him. Now on the facts, the facts were kind of against him. There was a tape where he said, [']Take me jail.['] He appeared to be intoxicated. So, I mean, we were doing our best to keep him from going to prison. I -- I hate it as bad as he did actually. I mean, but when we got to the sentencing hearing I felt like [the trial court] -- I think [it] indicated in -- at the sentencing hearing that [it] just didn't have a choice understand [sic] these circumstances. And I think [it] could have given him more than eight and [it] didn't. [Trial court] actually give gave him sort of an enhancement from 6 up to 8.[2]

On cross-examination, trial counsel reiterated that he had no difficulty communicating with the Petitioner. He said that the Petitioner appeared to understand the guilty plea proceedings because he responded appropriately to the trial court's questions. Trial counsel stated that, had the Petitioner failed to answer or express confusion, the trial court would have stopped the guilty plea.

The post-conviction court entered an order denying post-conviction relief on April 17, 2025, which provided in relevant part as follows:

> That the [P]etitioner failed to prove, by clear and convincing evidence, that his guilty plea was not knowingly and voluntarily entered.
>
> That, during the guilty plea, the [P]etitioner:
>     a. agreed to ask questions,
>     b. stated that trial counsel had reviewed discovery with him,

---

[2] Although the sentencing hearing transcript is not included in the record, we note that under Tennessee Code Annotated section 55-10-402(a)(6)(A), a sixth or subsequent conviction for violation of the DUI statute is a Class C felony and carries a mandatory minimum sentence of 150 days.

c. stated that trial counsel had answered all questions,

d. was advised by the Court of the ranges of punishment,

e. was advised by the Court of his rights,

f. stated that his guilty plea was freely and voluntarily being entered,

g. stated that no force or promises were used to cause his guilty plea,

h. stated that he was satisfied with trial counsel,

i. stated that the facts were substantially correct,

j. was advised by the Court that the guilty plea was a blind plea,

k. was advised by the Court of all the consequences of the guilty plea,

1. stated that he understood what was occurring during the guilty plea,

m. stated that he had no questions,

That the Court does not credit the testimony of the [P]etitioner that trial counsel was deficient in representing the [P]etitioner.

That the [P]etitioner would have been a Range III offender if he had been convicted after trial.

The Petitioner filed a timely notice of appeal, and this case is properly before this court for review.

## ANALYSIS

On appeal, the Petitioner argues that trial counsel rendered ineffective assistance of counsel by misleading him into "making a rash decision regarding his guilty plea believing he would only [be] sentenced to serve 150 days following his blind plea." [Appl. Brief 9]. The State responds that the post-conviction court properly denied relief because the Petitioner failed to establish that he received ineffective assistance of counsel. We agree with the State.[3]

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. Id. § 40-30-110(f); see

---

[3] To the extent that the Petitioner's argument challenges the knowing and voluntary nature of his guilty plea pursuant to Boykin v. Alabama, 395 U.S. 238, 242-44 (1969) and Blankenship v. State, 858 S.W.2d 897, 904 (Tenn.1993), we note that the argument section of the Petitioner's brief consists of a approximately five sentences and does not explicitly contend that his guilty plea was involuntarily or unknowingly entered. The Petitioner did not reference the relevant caselaw nor does he analyze the factors to determine whether his guilty plea was voluntarily and intelligently entered. Accordingly, this issue is waived.

Tenn. Sup. Ct. R. 28, § 8(D)(1); Nesbit v. State, 452 S.W.3d 779, 786 (Tenn. 2014). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

A claim for post-conviction relief based on alleged ineffective assistance of counsel presents a mixed question of law and fact. Mobley v. State, 397 S.W.3d 70, 80 (Tenn. 2013) (citing Calvert v. State, 342 S.W.3d 477, 485 (Tenn. 2011)). This court reviews "a post-conviction court's conclusions of law, decisions involving mixed questions of law and fact, and its application of law to its factual findings de novo without a presumption of correctness." Whitehead v. State, 402 S.W.3d 615, 621 (Tenn. 2013) (citing Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Calvert, 342 S.W.3d at 485). However, a post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. Calvert, 342 S.W.3d at 485 (citing Grindstaff, 297 S.W.3d at 216; State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)). "Accordingly, appellate courts are not free to re-weigh or re-evaluate the evidence, nor are they free to substitute their own inferences for those drawn by the post-conviction court." Whitehead, 402 S.W.3d at 621 (citing State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001)). "As a general matter, appellate courts must defer to a post-conviction court's findings with regard to witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." Id. (citing Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999)).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context

of a guilty plea, the petitioner must show that, but for counsel's errors, he would not have entered his guilty plea and would have proceeded to trial. Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

At the post-conviction hearing, the Petitioner testified that he was satisfied with trial counsel's representation but also acknowledged in his own petition that he consulted with trial counsel many times before entering a guilty plea. However, the Petitioner claimed that during these meetings trial counsel erroneously advised him that he would receive a sentence of 150 days. Trial counsel testified that he told the Petitioner that he was "looking at potentially 100 percent and . . . on the DUI charge; it was his eighth offense. And I told him I would do my best to convince [the trial court] not to send him to prison, maybe thinking or trying to explore whether or not that 100 percent actually meant you had to go to prison or maybe if you violated your probation you would get 100 percent at that point." Trial counsel noted that "the facts [of the case] were kind of against [the Petitioner]. There was a tape where he said, [']Take me jail.['] He appeared to be intoxicated. So, I mean, we were doing our best to keep him from going to prison."

During the guilty plea hearing, trial counsel and the court took steps to ensure that the Petitioner understood his sentencing exposure and expressly advised him that, as a Range II offender, he faced a sentence of 6 to 10 years imprisonment. The Petitioner acknowledged that he understood the terms of his plea agreement, that the trial court would make a sentencing determination at a later date, and that he would not be able to negotiate that sentence. Given this evidence, the post-conviction court found the Petitioner's testimony to lack credibility. The post-conviction court stated, "[the Petitioner] was apprised of all the consequences of his plea during the plea colloquy; indicated to [the trial court] that he understood everything. [The trial court] asked him specifically if he had any questions about any of it and he said no. [The trial court] asked him if he wanted [it] to accept the plea and he said yes." The post-conviction court also noted that the trial court explicitly asked the Petitioner if he was satisfied with trial counsel's representation, and he answered affirmatively. Further, the post-conviction court stated that trial counsel's advice to accept the plea agreement secured the Petitioner a "better result than he would have got had he gone to trial as -- since he was a Range II offender in his guilty plea, and he would have definitely been a Range III offender following trial." Ultimately, the court determined that the Petitioner "failed to prove, by clear and convincing evidence, that his guilty plea was not knowingly and voluntarily entered" and stated that it "does not credit the testimony of the [P]etitioner that trial counsel was deficient in representing the [P]etitioner."

Based on our review, the record does not preponderate against the determination of the post-conviction court. Accordingly, the Petitioner has failed to establish deficient performance or prejudice arising therefrom. He is not entitled to relief.

## CONCLUSION

Upon review, we affirm the judgment of the post-conviction court.


s/ *Camille R. McMullen*
CAMILLE R. MCMULLEN, JUDGE