IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 18, 2011 Session

## RONNIE LEE JOHNSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Putnam County**
**No. 07-0589      David A. Patterson, Judge**

**No. M2011-00881-CCA-R3-PC - Filed October 29, 2012**

After a trial by jury, the petitioner was found guilty of possession of over .5 grams of cocaine with intent to sell, a Class B felony, and possession of dihydrocodeinone, a Class A misdemeanor. He was sentenced to seventeen years for possession of cocaine and to a consecutive eleven months and twenty-nine days for possession of dihydrocodeinone, for a total effective sentence of almost eighteen years. His convictions were affirmed by this court on direct appeal. The petitioner filed a *pro se* petition for post-conviction relief and was appointed counsel. Following an evidentiary hearing, the post-conviction court denied all claims for relief. On appeal, the petitioner claims that the post-conviction court erred in denying his motion for recusal and erred in ruling that the petitioner had not received ineffective assistance of counsel at trial. After carefully reviewing the record and the arguments of the parties, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Post-Conviction Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JEFFREY S. BIVINS, J., joined.

Jason Francis Hicks, of Cookville, Tennessee, for the appellant, Ronnie Lee Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Randall A. York, District Attorney General; and Anthony Craighead, Deputy District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS AND PROCEDURAL HISTORY

The facts of this case were ably described in *State v. Ronnie Lee Johnson*, No. M2008-02848-CCA-R3-CD, 2010 Tenn. Crim. App. LEXIS 143, at **2-9 (Tenn. Crim. App. Feb. 18, 2010), the petitioner's direct appeal. In summary, law enforcement officers testified that they placed the petitioner's residence under surveillance for four days, during which time they witnessed between fifty and sixty people enter the petitioner's residence, stay three to five minutes, and then leave. Considering this indicative of drug activity and because the petitioner was a parolee who had consented to random warrantless searches of his premises as a condition of that parole, officers searched the petitioner's residence and found: (1) two bags of a white rock-like substance, (2) a set of digital scales with a white residue, (3) $2,700.00 in cash, (4) a wooden box containing twenty white pills, and (5) small bags spread throughout the residence.

On August 15, 2008, the petitioner was convicted of possession of over .5 grams of cocaine with intent to sell, a Class B felony, and possession of dihydrocodeinone, a Class A misdemeanor. The trial court found that the petitioner was a multiple offender and sentenced him to seventeen years on the first count, to be served consecutively to eleven months, twenty-nine days on the second count, with both sentences to be served consecutively to a previously-imposed nine-year sentence on an unrelated conviction. On February 18, 2010, this court upheld the petitioner's convictions on direct appeal against, *inter alia*, a challenge to the sufficiency of the convicting evidence and a Fourth Amendment challenge to the police search of the petitioner's residence. *See id.* at **9-22.

The petitioner filed a *pro se* petition for post-conviction relief on April 27, 2010. He was appointed counsel and permitted to file an amended petition. On February 23, 2011, the post-conviction court held a hearing concerning the petitioner's claims. At this hearing, the following evidence was presented:

Ms. Ida Johnson testified that she owned a rental property, which she had rented to an individual named Mr. Dyers. Ms. Johnson testified that at some unspecified point in time Mr. Dyers approached her and told her he was having financial difficulties and wanted to take in a roommate. She testified that afterward, the petitioner moved into the property that she rented to Mr. Dyers. The witness testified that Mr. Dyers moved out sometime later.

Ms. Johnson also testified that she had recently suffered a stroke. She testified that she did not know if she had ever been contacted by anyone concerning the petitioner's case or if she had ever met with or had any conversations with anyone from the Public Defender's Office.

Ms. Destiny Sherron Hill, the petitioner's daughter, testified that she frequently visited the petitioner at a residence that he shared with Mr. Mike Dyers. She testified that Mr. Dyers

never moved out of that residence and that he was still living there when her father moved out sometime after his arrest. The witness testified that there were two bedrooms located in the residence and that the front bedroom was occupied by Mr. Dyers while the back bedroom belonged to the petitioner.

Ms. Hill testified that on February 23, 2007, she was present at the residence shared by the petitioner and Mr. Dyers when individuals from the Putnam County Sheriff's Department arrived stating that they were there to execute a search warrant. When she asked to see the warrant, one of the officers told her that it was in fact just an agreement between the police, the petitioner, and the petitioner's parole officer giving them permission to search the petitioner's residence at any time. Ms. Hill testified that she asked to contact her father but was told that he was already in custody and had consented to the search. She testified that the police entered the residence and started searching. She testified that one of the officers searching the back bedroom asked her whose bedroom it was and that she told him that the back bedroom belonged to the petitioner.

On cross-examination, Ms. Hill testified that Mr. Mike Dyers was not present in the apartment during the police search. She also testified that she did not attend the petitioner's trial. The witness explained that she had surgery around the time of the trial and that she was physically located in Alabama at that time. She testified that she did not find out that the petitioner's trial had occurred until two days after it was over.

The witness testified that she and her father were close. When asked why, if they were so close, she had been unaware of her father's trial, she replied, "Well if I have cancer and I'm dying from cancer, do you think I'm going to leave my hospital bed?" When asked whether she would have attended the petitioner's trial if she had known about it beforehand, the witness initially stated, "I would have been [t]here." When the prosecutor asked whether her illness would have prevented her from traveling, she replied, "Weighing my options without my illness, I would have been there," but given her illness, "I wouldn't have got out of my hospital bed and came." The witness elaborated that her life was more important to her than "trying to come nine hours out of the way for thirty minutes" and again stated that because of her illness she could not have been at the trial.

On redirect examination, the witness testified that she was suffering from pancreatic cancer at the time of the petitioner's trial. She also testified that she was never contacted by her father's attorney or anyone from the Public Defender's Office concerning the case.

The next witness at the post-conviction hearing was the petitioner's trial counsel. Counsel testified that when he took over the case from the Public Defender's Office, he received an investigative file that included pretrial discovery from the District Attorney's

Office. He testified that he reviewed this file prior to trial. He testified that he did some additional investigation including retracing some of the leads, talking to the petitioner's previous employer, and making additional calls to some witnesses mentioned to him by the petitioner. Counsel also testified that the material he reviewed included a police surveillance video, two additional pictures taken of the petitioner during police surveillance, and a video taken by police officers inside the petitioner's residence.

When asked specifically about the video police officers had taken inside the petitioner's residence, Counsel initially testified that some of the video was played for the jury while some of it was not, and he could not remember which parts had been played. Counsel later testified that he was sure that the entire video had been shown to the jury at trial.

Afterward, the entire video was played for the witness in open court. At one point in the video, the witness testified that it "show[ed] three rocks on the bed" of the front bedroom. Counsel testified that he filed a pretrial suppression motion concerning this evidence because one of these "rocks" was tested by police, "but not the other."[1] Counsel claimed that he initially intended to mount a defense based on the comingling of this evidence, claiming that the police tested the wrong sample. However, Mr Allen testified that during a jury-out hearing concerning the issue, a key State witness "was confused and the judge, the court accepted his corrected testimony, the jury didn't get to hear it," which negated the planned defense. Counsel testified that "[w]hen [his initially-intended] defense didn't fly," he adjusted strategies. Counsel testified that he ultimately presented evidence that the petitioner had called police to his residence on a previous occasion and reported a possible break-in. Counsel argued to the jury that a drug dealer would not have called police to his residence. Counsel testified that he did not recall whether he renewed his objection to the admissibility of the video after it had been ruled on by the trial court.

Counsel testified that he advised the petitioner of his right to testify in his own defense, and the petitioner informed him that he was not inclined to do so. Counsel testified

---

[1] This testimony would imply that there were only two "rocks" of cocaine discovered in the front bedroom and depicted in the video. Confusion over whether the video shows two or three "rocks" of cocaine permeates the record. For example, later in his testimony, when viewing the video, Counsel stated that the three "rocks" laid out in the first bedroom of the residence were actually three "bags." Apparently viewing the video with a closer zoom, petitioner's counsel stated that it "looks like there are two now closer in" and the witness appeared to agree.

The petitioner maintains that there were three "rocks" depicted in the video throughout his brief on appeal. The trial court made no specific finding on the subject. It is not necessary to resolve the discrepancy for purposes of resolving the appeal.

that at some point prior to trial he received a notice of enhancement from the District Attorney's Office and that he communicated and explained that notice to the petitioner. Counsel also testified that he received a plea offer from the District Attorney's Office prior to trial and that he also communicated that plea offer to the petitioner. Counsel testified that he had supplied the petitioner with all of the discovery documents and other pertinent materials that he requested and that they had reviewed them together before trial. Counsel testified that he "believe[d]" he had spoken with the petitioner prior to his sentencing hearing and had explained to him what was going to transpire, but he testified that he "couldn't say that for sure."

Counsel testified that he had wanted to speak with the petitioner's daughter, Ms. Hill, prior to trial. Counsel testified that he talked to the petitioner's mother on several occasions in an effort locate the petitioner's daughter, but the petitioner's mother told him that she did not know where the petitioner's daughter could be located. Counsel testified that he never attempted to contact Ms. Ida Johnson because there was no dispute about whether the petitioner lived in the residence.

Counsel testified that after sentencing, he appealed the petitioner's convictions with the petitioner's consent. After the petitioner's direct appeal was denied by the Tennessee Court Of Criminal Appeals, he wrote the petitioner a letter stating that he would be willing to take the case all the way to the Tennessee Supreme Court. Counsel testified that the petitioner wrote him back "not long after that telling me he did not want to go to the Supreme Court, he wanted to do postconviction."

On cross-examination, Counsel testified that when he represented the petitioner, he already had considerable trial experience. He testified that he had plenty of time and opportunity to prepare for trial. He testified that he met with the petitioner prior to trial on at least two occasions. He testified that, with respect to his motion to suppress, the trial court ruled that the contraband that had been found in the petitioner's car was to be suppressed but that the contraband found in the petitioner's residence was admissible. Counsel also testified that when he discussed the State's plea offer with the petitioner, he "advised him to take the offer."

Counsel testified that during the State's case, a witness from the Tennessee Bureau of Investigation crime lab took the stand and "testified to the 3.8 grams of cocaine base" that was found in the petitioner's apartment. This witness also testified that he did not analyze "the other rock." Counsel testified that after this testimony was heard, he decided to switch trial strategies and argue that if the petitioner was a drug dealer, he would not have called police to his house. He testified that he called two Cookeville City Police Officers to the stand during the petitioner's case and had them testify about coming to the petitioner's

residence.   Finally, counsel testified that after the trial, the petitioner wrote him a letter thanking him for his performance.  Ms. Mary Louise Crawford, the petitioner's mother, testified in rebuttal that she had heard counsel's testimony to the effect that he had contacted her in an effort to locate the petitioner's daughter, and she did not recall counsel ever talking with her.

After hearing this testimony, the trial court questioned the petitioner under oath concerning his desire not to testify.  The petitioner testified that he had talked with his attorney about exercising his right to testify at the post-conviction hearing and that he had decided it was not in his best interest to do so.  Following this testimony, the post-conviction court heard arguments from both sides and took the matter under advisement.

On April 6, 2011, the post-conviction court issued a written order denying relief.  A timely notice of appeal was filed.  Satisfied that the appeal is properly before us, our decision follows.

## ANALYSIS

Pursuant to Tennessee's Post-Conviction Procedure Act, relief "shall be granted when [a] conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (Supp. 2011).  The petitioner has the burden of proving any factual allegations made in a petition for post-conviction relief by clear and convincing evidence. *See, e.g., Calvert v. State*, 342 S.W.3d 477, 485 (Tenn. 2011).  Any factual findings made by a post-conviction court are binding on appeal unless the record evidence preponderates against them.  *See Dellinger v. State*, 279 S.W.3d 282, 294 (Tenn. 2009).  Any legal conclusions made by the post-conviction court are reviewed *de novo* with no presumption of correctness.  *See Calvert*, 342 S.W.3d at 485.

The petitioner claims that the post-conviction court erred by denying his motion to recuse and by ruling that his trial counsel's performance was not constitutionally deficient. For the reasons that follow, we deny these claims.

## I.

The petitioner claims that the post-conviction court erred by denying his motion for recusal, arguing that recusal is required whenever a post-conviction judge has also served as the petitioner's trial judge.  We disagree.

Criminal petitioners in Tennessee have the right to have their claims reviewed by a judge who has not reached a prejudged conclusion concerning their case by reason of

interest, partiality, or favor. As Article VI of the Tennessee Constitution provides: "No judge . . . shall preside on the trial of any cause in the event of which he may be interested." TENN. CONST. art. VI, § 11. Generally speaking, recusal is necessary whenever the public might have some reasonable basis to doubt the neutrality and impartiality of the judge assigned to review the matter. *See, e.g., State v. Odom*, 336 S.W.3d 541, 575 (Tenn. 2011). "The test in determining whether recusal is necessary is an objective one, since the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Id.* (internal quotations omitted). "Under this objective test, recusal becomes necessary when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Id.* at 576 (internal quotations omitted). Decisions concerning the need for recusal rest in the sound discretion of the assigned judge, and will not be reversed on appeal "unless clear abuse appears on the face of the record." *State v. Reid*, 213 S.W.3d 792, 815 (Tenn. 2006).

The petitioner's claim of error concerning the denial of his motion to recuse is based on his reading of a statutory provision concerning the processing of post-conviction petitions and designation of reviewing judges. Tennessee Code Annotated section 40-30-105(b) provides:

> At either the trial proceeding or an appellate proceeding reviewing the proceeding, the presiding judge of the appropriate court shall assign a judge to hear the petition. The issue of competency of counsel may be heard by a judge other than the original hearing judge. If a presiding judge is unable to assign a judge, the chief justice of the supreme court shall designate an appropriate judge to hear the matter.

The petitioner reads the plain language of this provision as requiring a different judge to preside over a petitioner's trial and any ensuing post-conviction petition. However, as the petitioner acknowledges, in *State v. Garrard*, 693 S.W.2d 921, 922 (Tenn. Crim. App. 1985), this court described the statutory provision at issue as addressing the "purely administrative" function of assigning a hearing judge – and doing "nothing more" – before holding that "[t]here was no constitutional deprivation" caused by allowing a trial judge to adjudicate a post-conviction hearing concerning the same petitioner. Our ruling in that case is binding and fully disposes of the petitioner's claim.

The petitioner urges us to overrule *Garrard*, claiming that this court "gloss[ed] over" the relevant statutory language in that case. However, this panel is without authority to overrule *Garrard*. Rule 4(G)(2) of the Rules of the Tennessee Supreme Court expressly provides that "[o]pinions reported in the official reporter . . . shall be considered controlling authority for all purposes unless and until such opinion is reversed or modified by a court of competent jurisdiction." Moreover, it is the petitioner's reading of the relevant statutory

language that actually conflicts with the plain meaning of the words used. The petitioner's post-conviction petition involves numerous claims concerning the competency of his trial counsel. With respect to such claims, the statute is clear and unambiguous. It states that another trial judge "may" review such claims – not "shall." Consequently, we must reject the petitioner's argument concerning the proper interpretation of this statute. The petitioner's claim that the post-conviction court abused its discretion by denying his motion to recuse is accordingly denied.

## II.

The petitioner claims the post-conviction court erred by denying his ineffective assistance of counsel claim because his counsel committed numerous errors at trial. "A claim of ineffective assistance of counsel [on appeal] presents a mixed question of law and fact that is subject to *de novo* review with no presumption of correctness." *Smith v. State*, 357 S.W.3d 322, 336 (Tenn. 2011). The petitioner claims that his trial counsel erred by: (1) raising an ineffective assistance of counsel claim on direct appeal; (2) failing to object to videotape and witness testimony presented by the State at trial, which depicted or referenced allegedly suppressed evidence; (3) failing to inform him that an enhancement notice had been filed by the State, and failing to confer with him before sentencing; (4) failing to call his daughter as a trial witness; and (5) failing to file an application for permission to appeal his direct appeal to the Tennessee Supreme Court.[2] We disagree.

Both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution entitle a criminal petitioner to representation by counsel. U.S. CONST. AMEND. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."); TENN. CONST. art. I, § 9 ("[I]n all criminal prosecutions, the accused hath the right to be heard by himself and his counsel."). "Inherent in the constitutional right to counsel is the right to effective assistance of counsel." *Smith v. State*, 357 S.W.3d 322, 336 (Tenn. 2011). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). As the Tennessee Supreme Court has explained:

> [I]n *Strickland*, the United States Supreme Court adopted a two-part analysis
> for ineffective assistance of counsel claims. . . . Under *Strickland*, the first
> inquiry focuses on counsel's performance—whether "counsel's representation

---

[2] The State also interprets the petitioner's brief as claiming that his trial counsel was ineffective for failing to advise him that the State had offered him a plea agreement prior to trial. We do not so construe the petitioner's brief.

fell below an objective standard of reasonableness." 466 U.S. at 688; *Padilla v. Kentucky*, ___ U.S. ___, 130 S. Ct. 1473, 1482, 176 L.Ed. 2d 284 (2010). Counsel is required to "perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations." *Pylant* [*v. State*], 263 S.W.3d [854,] 868 [(Tenn. 2008)] (quoting *Baxter v. Rose*, 523 S.W.2d 930, 934-35 (Tenn. 1975)). The second *Strickland* inquiry is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694 . . . .

*Smith*, 357 S.W.3d at 337. "Failure to establish either deficient performance or prejudice necessarily precludes relief." *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011). With these standards in mind, we turn to the petitioner's specific claims.

## A.

The petitioner claims that his counsel erred by raising a claim of ineffective assistance of counsel on direct appeal. This court has consistently warned that "the practice of raising ineffective assistance of counsel claims on direct appeal is fraught with peril since it is virtually impossible to demonstrate prejudice as required without an evidentiary hearing." *State v. Blackmon*, 78 S.W.3d 322, 328 (Tenn. Crim. App. 2001) (internal quotations omitted). However, this court specifically "declin[ed] to consider the [petitioner's ineffective assistance of counsel] claim on direct appeal," because "[t]he trial court did not have an opportunity to make findings of fact because the [petitioner] did not include the claim in his motion for new trial." *Ronnie Lee Johnson*, 2010 Tenn. Crim. App. LEXIS 143, at *23. Consequently, the petitioner has not been barred from pursuing any claim for relief based on ineffective assistance of counsel as a result of his trial counsel's ill-advised decision to include the claim on direct appeal.

The post-conviction court below in fact reviewed, and we presently review on appeal, the petitioner's claim, based on numerous alleged grounds, of ineffective assistance of counsel at trial. Consequently, the petitioner cannot demonstrate any prejudice stemming from his counsel's decision to raise the issue on direct appeal. The petitioner's claim is denied.

## B.

The petitioner claims that his trial counsel was ineffective for failing to object to the admission of a video that was shown to the jury that included a depiction of "three rocks" of crack cocaine. The petitioner asserts that these "three rocks" were found by police on his person during a traffic stop and suppressed as a result of an earlier ruling by the trial court concerning the constitutionality of that stop. In a related claim, the petitioner claims that his trial counsel was ineffective for failing to object when an investigating detective and a crime lab technician allegedly made some reference to this suppressed evidence. However, the petitioner has failed to meet his burden of proof with respect to these issues.

While there is evidence in the record – in the form of testimony from petitioner's trial counsel – that the petitioner's jury was shown a video depicting "three rocks on the bed" at his trial, there is no evidence in the record that any of the "rocks" so depicted were the same evidence that had been suppressed by the trial court's ruling. There is no evidence in the record concerning the weight, size, and consistency of the suppressed evidence. More than 3.8 grams of cocaine base were recovered from the petitioner's residence and were properly entered into evidence at his trial. It is impossible to determine whether some or all of the "rocks" that form the basis of the petitioner's claim were properly in evidence. Without more, this court cannot conclude that the post-conviction erred by finding that petitioner's trial counsel was not deficient for failing to object to the video and testimony at issue.

## C.

The petitioner claims that his trial counsel was ineffective because he failed to consult and advise him during the sentencing process, and he failed to advise him that a notice of enhancement had been filed by the State. However, petitioner's trial counsel testified at the post-conviction hearing that he did, in fact, notify the petitioner of the notice, and he also explained the notice to the petitioner. Petitioner's trial counsel also testified that he believed that he had discussed with the petitioner what would occur at his sentencing hearing. The petitioner did not testify at the post-conviction hearing, and there is no other evidence in the record concerning the subject. Consequently, we conclude that the post-conviction court did not err by determining that the petitioner had failed to establish his entitlement to relief by clear and convincing evidence and did not err by ruling that the petitioner failed to establish any deficient performance by his trial counsel in this regard.

## D.

Next, the petitioner claims that the post-conviction court erred by ruling that his trial counsel was not constitutionally deficient for failing to call his daughter, Ms. Destiny Sherron Hill, as a witness at his trial. However, Ms. Hill testified that she would have been unable to attend the petitioner's trial even had she been called as a witness, due to her poor

-10-

health at the time. The post-conviction court found as a factual matter that Ms. Hill would not have been able to attend the petitioner's trial, and the evidence in the record does not preponderate against this finding. The petitioner's trial counsel also testified that he attempted to locate Ms. Hill prior to trial through the petitioner's mother, but he was ultimately unsuccessful. The petitioner's trial counsel can hardly be deemed constitutionally deficient for failing – after making a reasonable attempt – to locate an individual who would have been unavailable as a witness even had she been found.

## E.

Finally, the petitioner claims that the post-conviction court erred by ruling that his trial counsel was not deficient for failing to file an application for permission to appeal this court's decision concerning his direct appeal to the Tennessee Supreme Court. The petitioner's trial counsel testified at the post-conviction hearing that he did not file an application because his client instructed him not to do so. No contrary evidence appears in the record. Consequently, we conclude that the post-conviction court did not err by ruling that the petitioner failed to establish any deficiency in his trial counsel's performance in this regard. The petitioner's claim is denied.

## CONCLUSION

For the foregoing reasons, the judgments of the post-conviction court are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE