IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 18, 2016

**CHARLES T. HARTLEY v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Anderson County**
**No. B4C00005     Donald Ray Elledge, Judge**

———————————————————

**No. E2015-01445-CCA-R3-PC – Filed December 15, 2016**

———————————————————

The petitioner, Charles T. Hartley, appeals the denial of his petition for post-conviction relief. The petitioner, originally indicted for rape of a child, entered an *Alford* plea to the lesser offense of attempted aggravated sexual battery and received a sentence of ten years to be served on supervised probation. The petitioner filed a petition for post-conviction relief arguing: (1) the judgments in his case were illegal because they did not reflect the sentence of mandatory supervision for life; and (2) he received ineffective assistance of counsel. The post-conviction court dismissed the petition finding that it was barred by the statute of limitations and also ruled that if an appellate court concluded that the petition was not barred, that the petitioner received effective assistance of counsel. On appeal, the petitioner argues that the trial court erred when it dismissed his petition. Following our review, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, PJ., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

J. Thomas Marshall, Jr., Clinton, Tennessee, for the appellant, Charles T Hartley.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Dave S. Clark, District Attorney General; and Sandra Donaghy, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual and Procedural Background*

The petitioner was originally indicted for rape of a child, a Class A felony, in Anderson County, Tennessee on August 1, 2006. The petitioner was also indicted for

rape of a child involving the same victim, but a separate incident in Roane County, Tennessee on June 18, 2007. On August 21, 2008, the petitioner entered an *Alford* or "best interest" plea to a reduced charge of attempted aggravated sexual battery, a Class C felony. *See North Carolina v. Alford*, 400 U.S. 25 (1970) (a defendant may choose to plead guilty while maintaining his innocence by entering a "best interest" plea.). Pursuant to the plea agreement, the trial court sentenced the petitioner as a Range II, multiple offender to ten years' incarceration. The trial court suspended the petitioner's sentence and ordered it be served on supervised probation. The conditions of the plea agreement, including "mandatory supervision for life pursuant to TCA § 39-13-524," were set forth in the "Waiver of Sentencing Pursuant to T.R.Cr.P. 11(e)(1)(c)" and the "Waiver of Trial By Jury And Request For Acceptance of Guilty Plea - As A Best Interest Plea." Both documents were signed and dated by the petitioner, trial counsel, and the assistant district attorney.

At the plea hearing, the trial court reviewed the petitioner's rights with him. The trial court explained the petitioner's right to trial by jury, his right to confront witnesses against him, and his right to compel witnesses and evidence. The trial court further explained the petitioner's right to remain silent and to testify on his own behalf. The trial court explained the nature and consequences of a "best interest plea." The petitioner affirmed that he understood by entering a "best interest plea" he was waiving his right to a jury trial. He stated that he understood that entry of an *Alford* plea had the same effect as a guilty plea. The petitioner stated that he understood the plea and believed it was in his best interest.

The trial court clarified the elements of rape of a child and attempted aggravated sexual battery as well as the possible punishments for each offense. The trial court went over the plea agreement with the petitioner, including the requirement that he "comply with the mandatory supervision for life pursuant to TCA 39-13-524." The petitioner affirmed that he understood. The prosecutor offered the factual basis for the petitioner's guilty plea. Relevant to the petitioner's arguments on appeal, the prosecutor stated the following:

> [The victim] did not disclose to any of the hospital officials that he had been penetrated. They did treat him for rectal bleeding, recommended the follow-up treatment. And during the course of that study, they found that he had some salmonella in his system. The doctors have indicated to me that salmonella can cause rectal bleeding, but the way that you could tell 100 percent whether the rectal bleeding was caused by penetration or by this virus was to have a colonoscopy. A colonoscopy had been scheduled for this child but when the treatment seemed effective, the mother cancelled the colonoscopy.

- 2 -

. . .

. . . Yes, there was rectal bleeding that might be consistent with anal penetration. But it could also be caused by salmonella which was developed in this child's rectal area.

After setting forth the factual basis for the plea, the prosecutor explained that the petitioner had a prior conviction for "lewdness with a child under the age of 14." The prosecutor stated the offense would be the equivalent of aggravated sexual battery, a Class B felony, in Tennessee. The prosecutor also explained that the petitioner would be subject to mandatory supervision for life based on his prior record. The trial court clarified the petitioner's right to an appeal following a jury trial, and his right to have an attorney appointed for him if he could not afford one. The petitioner acknowledged that he understood his rights and that he wished to waive them and plead guilty. The petitioner maintained he was not confused, and he did not have any questions. The petitioner acknowledged he had not been threatened or induced to enter his plea, and he was entering his plea freely and voluntarily.

The trial court concluded the plea hearing by accepting the plea and explaining the terms of the plea agreement. The trial court sentenced the petitioner to ten years as a Range II, multiple offender, to be served on probation. The trial court ordered the petitioner to have no contact with the victim or any member of the victim's family. The trial court stated the petitioner would be subject to GPS monitoring until the victim reached the age of majority on September 13, 2011. The trial court ordered the petitioner to comply with the requirements of the sexual offender registry and with mandatory supervision for life pursuant to Tenn. Code Ann. § 39-13-524. The trial court then asked the petitioner whether he understood the terms of the plea agreement and sentence. The petitioner confirmed he understood.

The original judgment of conviction was entered on August 21, 2008. It indicated the wrong date of birth for the petitioner, omitted the statutory citation for aggravated sexual battery, and indicated the petitioner's release eligibility to be "Child Predator 100%." A box was checked reflecting that the petitioner would be subject to community supervision for life pursuant to Tenn. Code Ann. § 39-13-524. Additionally, a document entitled "Special Conditions" was attached to the original judgment. The attached document also reflected the sentence of mandatory community supervision for life pursuant to Tenn. Code Ann. § 39-13-524. The following day, August 22, 2008, the trial court entered a corrected judgment ("the first corrected judgment"), to correct the petitioner's date of birth and to add the statutory citation for aggravated sexual battery.

On April 9, 2009, the petitioner waived his rights and conceded to a violation of probation. The trial court reinstated the petitioner's sentence of probation and entered an amended judgment ("the first amended judgment"). The first amended judgment stated, "All conditions to remain as stated in the original judgment except the defendant is permitted to reside at the Nashville Rescue Mission, Nashville, Tennessee where GPS monitoring is available." Under "Release Eligibility" both boxes for "Violent 100%" and "Child Predator 100%" were checked. However, the box indicating the petitioner was sentenced to community supervision for life was not checked.

On July 8, 2011, following a hearing, the trial court revoked the petitioner's probation and ordered him to serve his ten-year sentence in confinement. The trial court entered a second amended judgment ("the second amended judgment"), on July 26, 2011. Again, the petitioner's release eligibility was listed as "Violent 100%" and "Child Predator 100%." The petitioner's sentence to community supervision for life was indicated on the second amended judgment.

On January 19, 2012, the petitioner filed a pro se petition for a writ of habeas corpus, arguing that his judgment was void and his sentence was illegal. The habeas corpus court entered an order transferring the case to the trial court for the entry of a corrected judgment to remove the child predator and violent offender release eligibility designations in compliance with the plea agreement. On April 17, 2012, the trial court entered a corrected judgment ("second corrected judgment") that removed the violent offender and child predator release eligibility designations. On April 25, 2012, the habeas corpus court entered an order finding the second corrected judgment conformed to the plea agreement and the sentencing laws. The habeas corpus court then dismissed the petitioner's habeas corpus petition. The box indicating the petitioner was sentenced to community supervision for life was not marked on the second corrected judgment. On appeal, this Court affirmed the judgment of the habeas corpus court. This Court concluded that the habeas corpus court was correct in finding that the petitioner's judgment contained clerical errors which could be corrected at any time.

On January 14, 2014, more than five years after the petitioner's original judgment was entered, the petitioner filed a petition for post-conviction relief. After a hearing on November 24, 2014, the trial court made a preliminary ruling that the statute of limitations for post-conviction relief had not expired. The trial court set the case for an evidentiary hearing to decide the statute of limitations issue along with the other issues raised by the petitioner. The post-conviction hearing was held on July 8, 2015.

At the post-conviction hearing, the petitioner testified that he entered a "best interest plea" in 2008; however, he would not enter the same plea again today. The petitioner stated he believed evidence existed to show he did not commit the crimes for which he pled guilty. He believed at the time of his guilty plea that he had no viable defense and would receive a forty-year sentence if he did not accept the plea agreement.

The petitioner admitted, in addition to the Anderson County charge, he also faced rape of a child charges in Roane County, Tennessee. The petitioner testified that he never received discovery and never saw a copy of the indictment for the Roane County charges until the summer of 2014. The petitioner testified he reviewed the victim's statement from the Roane County case. He discovered that the victim's description of the Roane County incident, in his opinion, was the same as the description the victim gave of the Anderson County incident. The petitioner admitted, however, that the statements alleged different dates. The petitioner referred to a "victim statement" from the Roane County investigation, which the post-conviction court admitted as an exhibit to the hearing for identification purposes.

The petitioner testified he was never provided a copy of the medical report from Children's Hospital at the time of his guilty plea. He stated the report failed to show any sign of sexual abuse and indicated the victim had suffered from rectal bleeding all of his life due to salmonella poisoning. The petitioner admitted he knew the medical reports existed at the time of his plea hearing but stated he was never provided a copy. The petitioner acknowledged he accompanied the victim to the hospital when the doctor examined the victim and delivered his diagnosis.

The petitioner testified that trial counsel discussed the mandatory community supervision for life requirement of his sentence with him. The petitioner contended trial counsel did not inform him he would be required to report to the office of probation and parole. The petitioner stated trial counsel only discussed the plea agreement with him for five minutes. The petitioner believed he would only be required to report to the police department and maintained he was never told he would be under supervision for the rest of his life. The petitioner testified he only met with trial counsel three times, and trial counsel failed to properly investigate his case.

The petitioner testified that the statute of limitations for attempted aggravated sexual battery is four years. He stated he entered his plea in 2008 based upon events that were alleged to have happened more than four years earlier in 2003. The petitioner testified no one explained to him that he would be required to waive the statute of limitations as part of his plea agreement. The petitioner testified that at the time he

entered his guilty plea he wanted to enter the plea. He stated his greatest motivation was getting out of jail. We note that no testimony was elicited from the petitioner as to whether he was aware that the date of the guilty plea is not controlling on a statute of limitations issue. The indictment is not in this record. However, the petitioner states in his brief that the offense was alleged to have occurred in late June 2003, and that he was indicted August 1, 2006, well within the statute of limitations of four years for the Class C felony offense of attempted aggravated sexual battery. *See* T.C.A. § 40-2-101(g) ("[p]rosecutions for any offense committed against a child on or after July 1, 1997, that constitutes a criminal offense under [§39-13-504] shall commence no later than the date the child reaches twenty-one (21) years of age. . . .").

On cross-examination, the petitioner admitted the prosecutor discussed the medical report during the plea hearing. He conceded the report was inconclusive regarding the cause of the victim's rectal bleeding, and salmonella could have been the cause of the victim's injuries. The petitioner also admitted that trial counsel hired an investigator to investigate the case more thoroughly. The petitioner acknowledged he met with either trial counsel or the investigator approximately nine or ten times prior to his plea hearing.

The petitioner admitted he was originally facing a minimum sentence of fifteen years on the rape of a child charge. However, trial counsel was able to obtain a plea agreement for a Class C felony with a ten-year sentence of probation. The petitioner agreed this was a "really good deal" and affirmed he was happy with his attorney's representation at the time of the plea hearing. On cross examination, the petitioner admitted that he knew about the medical report citing salmonella as a possible cause for the injuries to the victim and that the report played an instrumental role in acquiring a plea deal from the prosecution. The petitioner also testified that the trial judge and the prosecutor mistakenly stated his release eligibility would be 100 percent instead of thirty-five percent. He affirmed that, following the habeas corpus proceeding, his release eligibility was corrected on the judgment sheet. The petitioner also admitted trial counsel discussed community supervision for life with him. He affirmed that, during the plea hearing, the trial judge and the district attorney discussed community supervision for life as a mandatory part of his sentence. Finally, the petitioner admitted he told the trial court that he understood the meaning of "community supervision."

Trial counsel testified he represented the petitioner prior to and during his plea hearing. Trial counsel stated he had practiced law in the State of Tennessee for between fifteen and twenty years. He had predominantly handled divorce and criminal defense cases since 1989. Before going into private practice, trial counsel worked as an assistant district attorney and also served as an attorney in the United States Army. Trial counsel testified he had handled cases regularly in Anderson County for approximately fifteen

years at the time he was appointed to the petitioner's case. Trial counsel explained he was provided funds which he used to hire an investigator after being appointed to the petitioner's case. Trial counsel indicated he hired Mike Coen, a retired police officer, to help investigate the petitioner's case.

According to trial counsel, Mike Coen spoke and met with the petitioner regularly. Mr. Coen and the petitioner had a "good relationship," and the petitioner "seemed to trust Mr. Coen." Trial counsel testified that Mr. Coen met with the petitioner at least twice as often as the petitioner had indicated. Trial counsel also explained that Mr. Coen would provide him with a memo of what the petitioner and Mr. Coen had discussed after each meeting. In addition, trial counsel met with the petitioner more frequently than the petitioner represented, and any time the petitioner had a question during their meetings, he would stop and answer his question.

Trial counsel indicated he initially had a number of concerns with the petitioner's case. Trial counsel testified that shortly before he was appointed to the petitioner's case a new assistant district attorney was assigned to prosecute the petitioner's case. Trial counsel indicated that the new prosecutor was initially reluctant to offer any plea agreements for a Class A felony involving such a young victim. Trial counsel also explained that the petitioner was unable to provide him with a viable defense. When trial counsel asked the petitioner for a possible motive for why the child might fabricate a story of abuse, the petitioner responded, "Well, you know, I left and when I left, I stole all the kids' Christmas presents." Trial counsel determined that a jury would most likely react negatively to such a defense and decided to pursue a plea agreement.

Trial counsel testified that Mr. Coen was able to locate a medical report that listed salmonella as a possible explanation for the victim's rectal bleeding. Trial counsel acknowledged this evidence was not conclusive but could provide reasonable doubt as to the petitioner's guilt. Therefore, trial counsel used the report to negotiate a plea agreement with the State. Trial counsel explained the Anderson County prosecutor presented him with a plea agreement, after consulting with the prosecutor's office in Roane County, to resolve both cases and allow the petitioner to receive a sentence of probation. Trial counsel testified he presented this offer to the petitioner. After a few days, the petitioner accepted the plea agreement.

Trial counsel affirmed he explained the agreement to the petitioner, including the mandatory sentence of community supervision for life. Trial counsel described community supervision for life to the petitioner and explained that he would be supervised and monitored for the remainder of his life and would be required to report routinely to authorities. At the time, community supervision for life was still a new process, and trial counsel was unsure who would actually execute the supervision.

However, trial counsel testified he did discuss the requirements of community supervision for life with the petitioner on multiple occasions.

Trial counsel testified he believed the petitioner had "dodged a bullet." Had the petitioner's case gone to trial and the petitioner been convicted on a lesser included offense such as attempted aggravated sexual battery, he would have faced a sentence of incarceration based upon his criminal record. Trial counsel noted the State filed a notice of intent to enhance sentencing before the parties reached the plea agreement. Trial counsel testified he considered all of these factors in counseling the petitioner in whether to accept or reject the plea agreement.

On cross-examination, trial counsel testified he did not receive discovery on the petitioner's Roane County case. He told the petitioner they could bundle the plea agreement to include the Roane County charge, which would allow him to avoid receiving another sentence in Roane County. Trial counsel testified he went over the eight-page plea agreement with the petitioner paragraph by paragraph and explained each section. Finally, trial counsel stated he believed the plea agreement included a waiver of the statute of limitations for attempted aggravated sexual battery; however, he could not remember whether it was specifically written in the plea agreement. Trial counsel explained:

> And to get a good deal for [the petitioner] as a "C" we probably would have had to have waived the statute on that to get the lower charge to accommodate the release upon plea. And it would seem to be not appropriate for me to have said, no, he won't waive the statute. We'll plead to a "B" which is still within the statute. I didn't think that made any sense, because it was not accomplishing what I thought was beneficial and Mr. Hartley thought was beneficial in his case.

It appears that trial counsel was mistaken on the purported necessity to waive the applicable statute of limitations, just as Petitioner was mistaken.

Based in part on several pro se petitions the petitioner filed in the case, the post-conviction court found that the petitioner was "intelligent, well spoken, and obviously learned in the law." The post-conviction court found the petitioner was familiar with the justice system having been convicted of other crimes in the past. The court further found that the petitioner was aware of the sentence of community supervision for life, and had affirmed he understood the sentence prior to entering his plea. The post-conviction court accredited trial counsel's testimony over the petitioner's, and found that trial counsel fully explained "every issue" as it pertained to the petitioner's plea. The court found trial counsel and Mr. Coen investigated the petitioner's case thoroughly and met with the

petitioner several times to discuss his case strategy. The post-conviction court concluded trial counsel provided effective assistance to the petitioner and stated, "And as I found back when this plea was entered on August 21, 2008, he did a wonderful job for you. I still think he did a wonderful job for you."

The post-conviction court found trial counsel had the medical report from Children's Hospital and discussed the report and its implications with the petitioner. The court noted that the report was also explained by the prosecutor at the plea hearing. The post-conviction court determined the petitioner was advised of the requirement for community supervision for life by his attorney and also by the prosecutor during the plea hearing. The post-conviction court dismissed the petition for post-conviction relief. The post-conviction court determined that the petition was barred by the statute of limitations, and trial counsel provided effective assistance of counsel. This appeal followed.

*Analysis*

Statute of Limitations

Appellate courts review a post-conviction court's conclusions of law, decisions involving mixed questions of law and fact, and its application of law to its factual findings de novo without a presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011); *Calvert v. State*, 342 S.W.3d 477, 485 (Tenn. 2011). Issues regarding whether due process required the tolling of the post-conviction statute of limitations are mixed questions of law and fact and are, therefore, subject to de novo review. *Smith v. State*, 357 S.W.3d 322, 355 (Tenn. 2011) (quoting *Harris v. State*, 301 S.W.3d 141, 145 (Tenn. 2010)).

The petitioner contends that errors in the judgments entered in his case rendered his sentence illegal, tolling the statute of limitations for bringing a petition for post-conviction relief. First, the petitioner argues that errors in his judgments issued on: August 21, 2008, August 22, 2008, April 9, 2009, July 26, 2011, and April 11, 2012, designating his release eligibility as "Child Predator 100%," "Child Rapist 100%," and "Violent Offender," were illegal and, thus, void. Second, the petitioner argues that errors in his judgments issued on: April 9, 2009, April 11, 2012, and April 17, 2012, failing to indicate his sentence of community supervision for life, resulted in an illegal sentence and void judgment. Therefore, the petitioner argues the statute of limitations was tolled, and his petition was timely.

An individual convicted of a crime must file his petition for post-conviction relief within one year of the "final action of the highest state appellate court to which an appeal is taken, or if no appeal is taken, within the date on which the judgment becomes final . . .

Otherwise, consideration of such petition shall be barred." Tenn. Code Ann. § 40-30-102(a). Compliance with the one-year statute of limitations is an element of the petitioner's right to file a petition. *Id.* at § 40-30-102(b). "Time is of the essence when asserting a claim for post-conviction relief." *Larry Keith Huddle v. State*, No. E2012-01903-CCA-R3-PC, 2013 WL 3306748, at *2 (Tenn. Crim. App. June 27, 2013); *see also State v. Nix*, 40 S.W.3d 459 (Tenn. 2001).

In Tennessee, a trial court's judgment becomes final thirty days after entry, unless a specified post-trial motion is filed, in which case the judgment becomes final upon grant or denial of any such post-trial motion or petition. *State v. Brown*, 479 S.W.3d 200, 205-06 (Tenn. 2015). Generally, a trial court may not alter a final judgment. *Id.* at 206. However, a trial court may alter a final judgment in order to correct an "illegal, as opposed to a merely erroneous, sentence at any time, even if it has become final." *Id.* at 206; *citing State v. Burkhart*, 566 S.W.2d 871, 873 (Tenn. 1978). A sentence is illegal when it is in "direct contravention of the express provisions of an applicable statute, and consequently is a nullity." *Burkhart*, 566 S.W.2d at 873. A judgment of conviction based upon an illegal sentence is void. *Id.; see also State v. Bronson*, 172 S.W.3d 600 (Tenn. 2005).

Regarding the petitioner's first argument, it should be noted that the habeas corpus court previously determined that the errors in the designation of the petitioner's release eligibility were merely clerical errors. *Charles T. Hartley v. Arvil Chapman, Warden*, No. M2012-01034-CCA-R3-HC, 2013 WL 1869033 (Tenn. Crim. App. May 3, 2013). Based on the habeas corpus court's factual findings, this Court held that the illegal sentence was not a material part of the petitioner's guilty plea, and, therefore, constituted only a clerical error. *Id*.

"Once an issue has been actually or necessarily decided by a court of competent jurisdiction, the doctrine of collateral estoppel renders that determination conclusive on the parties and their privies in subsequent litigation . . ." *Gibson v. Trant*, 58 S.W.3d 103, 113 (Tenn. 2001) (*quoting State ex rel. Cihlar v. Crawford*, 39 S.W.3d 172, 178-79 (Tenn. Ct. App. 2000)). The doctrine of collateral estoppel only applies when the determination of the issue in the former action was necessary to the judgment. *Dickerson v. Godfrey*, 825 S.W.2d 692, 694 (Tenn. 1992). The issue of errors in the petitioner's release eligibility designation was conclusively decided by this Court in the petitioner's habeas corpus appeal. *Charles T. Hartley*, 2013 WL 1869033 at *3. This Court's final determination that the erroneous designation of the petitioner's release eligibility was a clerical error is binding on this Court in the petitioner's post-conviction petition. *Gibson*, 58 S.W.3d at 113. This Court held that the clerical errors were corrected by the habeas corpus court and, therefore, the petitioner was not entitled to further relief. *Charles T. Hartley,* 2013 WL 18969033 at *4. In light of this Court's prior holding, we conclude

- 10 -

that the errors in the petitioner's release eligibility designation were merely clerical errors. Therefore, the errors did not result in an illegal sentence and did not toll the statute of limitations for post-conviction relief.

Turning to petitioner's second argument, Tennessee Code Annotated section 39-13-524(a) requires that any individual who violates Tennessee Code Annotated 39-13-504, on or after July 1, 1996, "shall receive a sentence of community supervision for life," in addition to the statutorily authorized punishment. Tenn. Code Ann. 39-13-524(a). The judgment of conviction for an individual who commits an offense covered under section 39-13-524(a) must include an indication that the individual is sentenced to community supervision for life. Tenn. Code Ann. 39-13-524(b). This Court has established that "the failure to include the mandatory community supervision sentence as a part of the judgment results in an illegal sentence." *Dennis J. Rountree, Jr., v. State*, No. M2008-02527-CCA-R3-PC, 2009 WL 3163132 (Tenn. Crim. App. Aug. 19, 2009) (*citing State v. Bronson*, 172 S.W.3d 600, 601-02 (Tenn. Crim. App. May 9, 2005)).

The petitioner argues that because his judgments issued on April 9, 2009, April 11, 2012, and April 17, 2012, did not include the sentence of community supervision for life, his sentence was illegal, and his judgment never became final. As a result, the petitioner argues the statute of limitations has yet to begin to run. The petitioner relies on this Court's decision in *Dennis J. Rountree, Jr., v. State*, No. M2008-02527-CCA-R3-PC 2009 WL 3163132 (Tenn. Crim. App. Aug. 19, 2009), in support of his argument.

In *Rountree*, the petitioner was charged with six counts of aggravated sexual battery and pled guilty to two counts of attempted aggravated sexual battery. *Id.* at *1. The original judgments indicated that the petitioner was a sex offender and would be placed on the sex offender registry but failed to indicate he was sentenced to community supervision for life. *Id.* Corrected judgments were entered adding the mandatory sentence of community supervision for life, and the petitioner filed a petition for post-conviction relief arguing that he received ineffective assistance of counsel because he was not made aware of the lifetime supervision requirement. *Id.* The post-conviction court dismissed the petition as barred by the statute of limitations. *Id.* This Court reversed the post-conviction court's ruling and held that "failure to include the mandatory community supervision sentence as part of the judgment results in an illegal sentence." *Id.* The Court determined that the petitioner's judgments did not become final until the day the corrected judgments were entered, and the statute of limitations began to run on that date. *Id.*

The Court in *Rountree* did not promulgate a new rule of law requiring the statute of limitations be reset when there is a subsequent error in a defendant's judgment sheet, as the petitioner here would suggest. Instead, the *Rountree* Court held that due process

requires tolling the statute of limitations when a subsequent judgment imposes an unforeseen and unanticipated sentence. *Id.* The unforeseen nature of the subsequent sentence renders the petitioner's guilty plea "unknowing," and, therefore, void. Where, however, as here, the judgment reflects the sentence the petitioner originally agreed to as part of his plea agreement, due process does not require tolling the statute of limitations.

Furthermore, *Rountree* and other cases holding similarly are distinguishable from the petitioner's case in two other significant ways. First, the petitioner in *Rountree*, was never informed of the mandatory sentence of community supervision for life before he pled guilty and before his original judgment was entered. *Dennis J. Rountree, Jr.,* 2009 WL 3163132 at \*1. In other words, the corrected judgments in *Rountree* changed the petitioner's sentence in a wholly unforeseen and inconsistent manner than what he could have anticipated pursuant to his plea agreement. Second, the petitioner's original judgment in *Rountree* failed to indicate the sentence of community supervision for life.

Here, the petitioner was informed on multiple occasions of the mandatory sentence for lifetime supervision under the statute, and the petitioner's original judgment entered on August 21, 2008, included the sentence for community supervision for life. In addition, the "Waiver of Sentencing Pursuant to T.R.Cr.P. 11(e)(1)(c)" and "Waiver of Trial by Jury And Request For Acceptance of Guilty - As Best Interest Plea" signed by the petitioner, each included mandatory supervision for life pursuant to Tennessee Code Annotated section 39-13-524 as terms of the plea agreement.

The record is clear that community supervision for life was a mandatory component of the petitioner's sentence, and the original judgment indicates this as well. The fact that subsequent judgments, meant to correct clerical errors, failed to indicate the lifetime supervision requirement does not render the original judgment void or the petitioner's sentence illegal. Despite the numerous clerical errors and unusual number of amended and corrected judgments in the petitioner's case, the original judgment was a valid final judgment, and the statute of limitations for post-conviction relief began to run thirty days after its entry on August 21, 2008. Therefore, we affirm the post-conviction court's determination that the petitioner's petition for post-conviction relief is barred by the one-year statute of limitations.

Having concluded that the petition was barred by the statute of limitations, the evidentiary hearing held by the post-conviction court is a nullity. We decline to provide what would essentially be an advisory opinion on the petitioner's remaining issues.

- 12 -

Based upon the briefs of parties, the record, and the applicable law, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, PRESIDING JUDGE