IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 19, 2021

**STATE OF TENNESSEE v. RONALD EDWARD BOYKIN, JR.**

**Appeal from the Criminal Court for Davidson County**
**No. 2009-C-2477     Cheryl A. Blackburn, Judge**

_____

**No. M2020-00558-CCA-R3-CD**

_____

The Defendant, Ronald Edward Boykin, Jr., pleaded guilty in the Davidson County Criminal Court to four counts of sexual battery by an authority figure. Pursuant to the plea agreement, he was sentenced to concurrent fifteen-year sentences in the Tennessee Department of Correction with release eligibility after serving thirty percent of the sentences. The Defendant was also required to register as a sex offender and to be subject to community supervision for life. Thereafter, the Defendant filed a motion to correct his sentence pursuant to Tennessee Rule of Criminal Procedure 36.1, alleging that "[t]he trial court erred in holding that the lifetime community supervision portion of [the Defendant's] sentence is legal, where the statutory authority for that provision mandates lifetime supervision for certain offenses but not the offenses for which [the Defendant] was convicted." The trial court denied the motion, and the Defendant appeals. We reverse the judgment of the trial court and remand the case for entry of corrected judgments of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed;**
**Case Remanded**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

Emma Rae Tennent (on appeal) and Chris Street-Razbadouski (at hearing), Nashville, Tennessee, for the Appellant, Ronald Edward Boykin, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Patrick Newport, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## I.  Factual Background

On August 10, 2009, the Davidson County Grand Jury returned a sixty-count indictment charging the Defendant with thirty counts of sexual battery by an authority figure, twenty-one counts of rape, and eleven counts of statutory rape by an authority figure.

The Defendant ultimately pleaded guilty to four counts of sexual battery by an authority figure.  At the Defendant's February 3, 2010 guilty plea hearing, the trial court cautioned the Defendant that he was under oath and that he was required to answer questions truthfully or potentially face perjury charges.  The Defendant said that he understood.  The trial court stated that the plea agreement reflected that the Defendant was pleading guilty to four counts of sexual battery by an authority figure, that he was receiving concurrent sentences of fifteen years for each count with release eligibility after serving thirty percent of the sentences, and that the remaining charges against the Defendant were dismissed.  The Defendant agreed that the trial court's summary of his guilty plea was correct.

The trial court informed the Defendant that if he had been convicted at trial of sexual battery by an authority figure, he would have been subject as a Range I offender to a sentence between three years and six years with thirty percent release eligibility.  However, pursuant to the plea agreement, he would receive an out-of-range sentence of fifteen years on each count.  The Defendant said that he understood and that he was waiving any issues regarding the sentences.

The trial court cautioned that as a "consequence[]" of the plea, the Defendant would be required to register as a sex offender and would be subject to community supervision for life after his release from confinement.  The Defendant agreed that he understood.  The trial court further explained that the Defendant would have to remain on the sex offender registry for the rest of his life; however, after fifteen years, he could petition the court to be released from community supervision.  The Defendant agreed that he understood.

The trial court noted that the Defendant had faced a total of sixty charges in a "very large indictment" and that the Defendant would have been required to register as a sex offender and would have been subject to community supervision for life if he had been convicted of any of the charged offenses at trial.[1]  The trial court advised the Defendant

---

[1]The trial court stated that the Defendant would have been subject to community supervision for life had be been convicted at a trial of the charged offenses of sexual battery by an authority figure, rape, and statutory rape by an authority figure.  However, at the time the Defendant committed the offenses,

that a conviction for sexual battery by an authority figure carried a sentence of three to fifteen years, that a conviction for rape carried a sentence of eight to twelve years and required 100% service of the sentence in confinement, and that a conviction for statutory rape carried a sentence of one to two years. The Defendant agreed that he understood.

The trial court asked if trial counsel had explained the charges and the range of punishment for each offense. The Defendant said yes and stated that trial counsel had advised him that he could have received consecutive sentences if he were convicted at trial, particularly because the offenses concerned multiple sexual acts involving minor children. The Defendant said that he had thoroughly discussed everything about his case with trial counsel. The Defendant said that he had read the plea agreement with trial counsel, that trial counsel had answered the Defendant's questions to the Defendant's satisfaction, and that he was satisfied with trial counsel's representation.

The Defendant said that he was not taking any medication, that he had no questions, and that he had no difficulty understanding what he was doing. The Defendant noted that he had a bachelor's degree and was pursuing a master's degree. The Defendant understood that he did not have to plead guilty, that he had a right to trial, and that he was giving up that right by pleading guilty. He said that no one had threatened him or promised him anything other than what was in the plea agreement in order to convince him to plead guilty.

The State recited the following factual basis for the guilty pleas:

> In 2009-C-2477 had the State's case gone to trial the State expects the proof would have shown that the defendant was a schoolteacher at Donelson Middle School employed by Metro School System and was teaching in the Make a Change program dealing with troubled kids.
>
> Following a traffic stop here in Davidson County it was discovered that the defendant had outstanding warrants for sexual assault in another county. Once those allegations were made public four of the children – or the teenage boys in the defendant's Make a Change program here in Davidson County came forward with allegations that they had been sexually abused by the defendant.

Tennessee Code Annotated section 39-13-524 provided mandatory community supervision for life for offenders who committed aggravated rape, rape, aggravated sexual battery, or rape of a child. *See* T.C.A. § 39-13-524 (Supp. 2008) (subsequently amended). Thus, only convictions of the rape charges would have subjected the Defendant to community supervision for life.

All of these boys were between the ages of thirteen and fifteen-years old. All of the boys or the victims had single mothers who were befriended by the defendant, and eventually the defendant convinced the mothers to allow the boys to spend the night at his home. During these overnight visits the defendant would sleep in the nude with the victims and would attempt to rub his penis against the boys['] rear ends or even to penetrate their rectums with his penis.

The Defendant agreed that the facts the State read into the record were accurate.

The trial court summarized the terms of the plea agreement:

So in Counts 1, 23, 57, and 59 I'm going to find you guilty of sexual battery by an authority figure. It's a C felony. They're going to be career statuses in terms of the length of the sentence, which is fifteen years with a thirty percent release eligibility. . . . They're all concurrent with each other. . . . You will have to register as a sex offender when released as well as have lifetime supervision. You're waiving the range issue and the – but not the percentage issue. It's a *State vs. Hicks* plea.[2] All other counts are dismissed as part of this plea.

The Defendant later filed a petition for habeas corpus relief, in which he raised several issues, including a challenge to the lifetime community supervision requirement of his sentences as being "in direct contravention of the statute, which does not require lifetime community supervision for the offense of sexual battery by an authority figure." *See Ronald E. Boykin v. Jerry Lester, Warden*, No. W2013-01699-CCA-R3-HC, 2014 WL 1389497, at *1 (Tenn. Crim. App. at Jackson, Apr. 8, 2014), *perm. app. denied* (Tenn. Sept, 18, 2014).

The habeas corpus court summarily dismissed the petition, and, on appeal, this court affirmed the dismissal. *Id.* at *2. As relevant in the present case, this court stated in the previous appeal that in order to sustain a successful habeas corpus challenge on an illegal sentence claim, the Defendant was required to attach sufficient documentation to his habeas

---

[2] Our supreme court has approved the use of so-called "hybrid" sentences, whereby a defendant pleads guilty to a sentence length in one range but a different range classification for purposes of calculating the release eligibility date. *See Hicks v. State*, 945 S.W.2d 706 (Tenn. 1997). The practice is limited to an agreement for a sentence length which does not exceed the statutory maximum. *See Hoover v. State*, 215 S.W.3d 776 (Tenn. 2007) ("A plea-bargained sentence may legally exceed the maximum available in the offender Range so long as the sentence does not exceed the maximum punishment authorized for the plea offense.").

corpus petition to establish the illegality. *Id.* However, the Defendant failed to include a transcript of the guilty plea hearing; therefore, this court had "no way to determine whether the lifetime community supervision was part of his guilty pleas or was merely a clerical mistake on the judgment forms, which may be corrected by the trial court through the entry of corrected judgments." *Id.*

On December 5, 2019, the Defendant filed the instant "Motion to Correct Illegal Sentence Pursuant to Rule 36.1." In the motion, the Defendant acknowledged that pursuant to *Hicks*, a "hybrid plea" is permissible so long as it does not exceed the maximum punishment for the offense. However, the Defendant contended Tennessee Code Annotated section 39-13-524 did not mandate lifetime supervision for sexual battery by an authority figure. The Defendant contended, therefore, that "the judgments sentencing him to lifetime supervision 'pursuant to TCA 39-13-524' are not authorized by the applicable statute and must be corrected."

At the hearing on the motion, the trial court stated that the Defendant had been released from confinement and was under community supervision for life, "which is what he is challenging in this." The trial court noted:

> On the four-page plea petition that was signed at the time of the plea, and my signature on the front of the file, or the front of the petition to plead guilty, I have made note "register as a sex offender, community supervision" with a thing that says "discussed in open court." Where the actual plea agreement is worked out, it says "register as sex offender, and then 39-13-524 lifetime supervision discussed in open court," and I added to that, indicated we discussed that in open court.

The trial court further noted that if the Defendant had gone to trial on the charges to which he pleaded guilty, he would not have received community supervision for life.

The Assistant District Attorney who prosecuted the Defendant's case but was no longer with the District Attorney's office, testified that at the time of the Defendant's case, she was assigned to the Child Physical and Sexual Abuse Unit, which prosecuted cases of severe child abuse and sexual abuse of children. She agreed she knew that the offense of sexual battery by an authority figure "would not carry community supervision for life." She recalled that the Defendant had committed crimes against children in a different school district and had "circumvented the background check" when he began working for the Metro School System. The former prosecutor said she was concerned that the Defendant could "wind up in another school system perping on other children . . . ." She recalled telling the Defendant that having teenage boys as witnesses was "a difficult challenge" in

a prosecution but that two of the boys were willing to testify about what the Defendant had done to them.

The former prosecutor did not recall specifically advising the Defendant that the State would not agree to a guilty plea unless he agreed to community supervision for life. She stated, however, "that for me to have given him a compromise or a *Hicks* plea of that nature, there would've had to have been some concession," noting that she thought the Defendant was dangerous and that he had a prior history of abusing children. She said that by "compromise plea," she meant the dismissal of the rape charges, which required one hundred percent service of the sentence in confinement and community supervision for life. She stated that if the Defendant had been convicted of rape, he faced a minimum sentence of eight years at one hundred percent, and the trial court could have ordered the convictions to be served consecutively, which would have exposed the Defendant to an extensive sentence. However, pursuant to the plea agreement the Defendant received a total effective sentence of fifteen years at thirty percent release eligibility. The former prosecutor said, "[I]f there were an error in knowing whether community supervision would be applicable under the circumstances, it was this argument that defense counsel now makes that community supervision isn't governed by [*Hicks*]. Not whether I knew that was applicable to the crime itself."

On cross-examination, the former prosecutor stated that the parties had discussed a *Hicks* plea, which allowed the parties to negotiate outside the range for a Range I offender but within the maximum sentence for the class of felony to which the Defendant pleaded guilty. She maintained that the trial court would not have allowed the Defendant to plead guilty to a sentence that was "[s]omething outside of what the law allowed. There would've been another check on that beyond my own mistake." She maintained that in exchange for the dismissal of the rape charges, which required the Defendant to serve one hundred percent of the sentence in confinement, the Defendant had to make "some kind of concession" and that simply agreeing to a fifteen-year sentence was not an acceptable "concession."

The former prosecutor stated that she was concerned about the Defendant's being "[a]nywhere near children or in any position of authority over children at all," such as "churches, youth programs, Big Brothers, Big Sisters, anything of that nature that would have put him in a position that wouldn't show up on some sort of background check where he would be able to be an authority figure in these kids' lives." She acknowledged that the law differentiated between when sex offenders and violent sex offenders were eligible to petition for removal from the registry.

The trial court asked if trial counsel were "trying to go back into the plea negotiation[.]" Trial counsel responded he was trying to clarify that the former prosecutor's goal had been to keep the Defendant away from schools and that she thought

her goal could be accomplished only with community supervision. Trial counsel said he wanted to establish that lifetime supervision was not necessary because the Defendant was on the sex offender registry which would have prohibited him from being in a school.

The trial court stated that it had examined the plea petition and observed that it had handwritten on the plea petition the language mandating the lifetime supervision. The trial court explained that the requirement was noted by trial counsel and the former prosecutor at the guilty plea hearing. Additionally, the trial court recalled that it had cautioned the Defendant at the guilty plea hearing that lifetime supervision was a requirement of the guilty plea. The former prosecutor confirmed that she would have interrupted the trial court if it had stated the provisions of the agreement incorrectly.

Trial counsel testified that he recalled discussing the community supervision for life requirement with the prosecutor. Trial counsel also recalled talking with the Defendant about the community supervision for life requirement and stated that his investigator "recall[ed] being at the same meeting." Trial counsel said that his memory of the negotiations was consistent with the former prosecutor's testimony.

Trial counsel said that he and the Defendant "spent quite a bit of time" discussing the possible consequences of going to trial or pleading guilty, including potential sentences. He specifically discussed the community supervision for life requirement. Trial counsel explained to the Defendant that the supervision requirement "was a part of the whole package of him just getting three convictions as opposed to going to trial." Trial counsel and the Defendant reviewed the sentences the Defendant could receive if he were convicted at trial and the likelihood of consecutive sentencing. Trial counsel said that if the trial court had announced the terms of the plea agreement incorrectly, he would have interrupted the court and "said that is not what we agreed to."

The Defendant's motion counsel acknowledged that from trial counsel's testimony and the former prosecutor's testimony, the community supervision for life requirement appeared to have been "a material element of the plea." Therefore, pursuant to Tennessee Rule of Criminal Procedure 36.1, the Defendant should be able to withdraw his guilty plea or have his sentences corrected. Motion counsel stated that the Defendant was "not trying to withdraw the plea," only requesting the sentence "just be corrected as to the community supervision."

The trial court denied the Rule 36.1 motion, finding that Defendant agreed to the community supervision for life requirement as a result of plea negotiations. On appeal, the Defendant challenges the trial court's ruling.

## II. Analysis

Tennessee Criminal Procedure Rule 36.1 states, in relevant part, that

(a)(1) Either the defendant or the state may seek to correct an illegal sentence by filing a motion to correct an illegal sentence in the trial court in which the judgment of conviction was entered. . . .

(a)(2) For purposes of this rule, an illegal sentence is one that is not authorized by the applicable statutes or that directly contravenes an applicable statute.

The trial court is required to file an order denying the motion if it determines that the sentence is not illegal. *Id*. at 36.1(c)(1).

Only fatal errors result in an illegal sentence and "are so profound as to render the sentence illegal and void." *Id*. at 595; *see State v. Cantrell*, 346 S.W.2d 445, 452 (Tenn. 2011). Fatal errors include sentences imposed pursuant to an inapplicable statutory scheme, sentences that designate release eligibility dates when early release is prohibited, sentences that are ordered to be served concurrently when consecutive service is required, and sentences that are not authorized by statute. *State v. Wooden*, 478 S.W.3d 585, 595 (Tenn. 2015). Errors which are merely appealable, however, do not render a sentence illegal and include "those errors for which the Sentencing Act specifically provides a right of direct appeal." *Id*.; *see Cantrell*, 346 S.W.2d at 449. Appealable errors are "claims akin to . . . challenge[s] to the sufficiency of the evidence supporting a conviction" and "involve attacks on the correctness of the methodology by which a trial court imposed sentence." *Wooden*, 478 S.W.3d at 595; *see Cantrell*, 346 S.W.2d at 450-52.

At the time the Defendant committed the offenses, sexual battery by an authority figure was not one of the enumerated offenses which required community supervision for life. Tennessee Code Annotated section 39-13-524(a) provided that

> In addition to the punishment authorized by the specific statute prohibiting the conduct, any person who, on or after July 1, 1996, commits a violation of § 39-13-502 [aggravated rape], § 39-13-503 [rape], § 39-13-504 [aggravated sexual battery], § 39-13-522 [rape of a child], or attempts to commit a violation of any of these sections, shall receive a sentence of community supervision for life.

The record reflects that the Defendant was charged with, but did not plead guilty to, offenses enumerated in Tennessee Code Annotated section 39-13-524 for which community supervision for life was required. Nevertheless, the trial court approved the parties' plea agreement, which called for the Defendant to receive community supervision for life after he served his fifteen-year sentence for four counts of sexual battery by an authority figure, an offense not listed in section 39-13-524. By all accounts, community supervision for life was a material component of the plea agreement. *See* Tenn. R. Crim. P. 36.1(c)(3)(C).

As noted above, "hybrid" sentences involving a sentence length in one range but utilizing a different range classification for purposes of calculating the release eligibility date are permissible. *See Hicks*, 945 S.W.2d 706. However, the sentence length may not exceed the statutory maximum. *See Hoover*, 215 S.W.3d 776. "The sentencing guidelines of the 1989 Act are jurisdictional and binding on trial courts." *McConnell v. State*, 12 S.W.3d 795, 800 (Tenn. 2000). Thus, a court must "ascertain and give effect to the legislature's intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Hicks*, 945 S.W.2d at 707.

In the present case, the plea agreement specified that the Defendant would serve fifteen years at 30%, followed by community supervision for life. "The sentence of community supervision for life shall commence immediately upon the expiration of the term of imprisonment imposed upon the person by the court or upon the person's release from regular parole supervision, whichever first occurs." T.C.A. § 39-13-524 (2018) (subsequently amended); *see Calvert v. State*, 342 S.W.3d 477, 490 (Tenn. 2011) ("The community supervision requirement is punitive and carries 'significant' consequences, including the payment of a supervision fee and regular reporting to a parole officer who has the discretion to impose conditions of supervision.")

Sexual battery by an authority figure is a Class C felony. *See* T.C.A. § 39-13-527 (2018). The maximum sentence for a Class C felony is fifteen years. *See id.* § 40-35-111(b)(3) (2018).

The sentence the trial court imposed pursuant to the plea agreement involved punishment beyond that which is authorized for the offense, both because the Sentencing Act does not authorize the imposition of community supervision for life for sexual battery by an authority figure, and because a sentence involving service of fifteen years followed by community supervision for life exceeds the fifteen-year maximum allowable sentence for the offense. In this regard, we note that the community supervision for life statute is not codified in Title 40, Chapter 35, containing the Criminal Sentencing Reform Act of 1989. Rather, the community supervision for life statute is codified in Title 39, Chapter 13, pertaining to criminal offenses against the person.

The record reflects that the State attempted to craft a plea bargain to address what the prosecutor considered to be legitimate concerns about whether the Defendant might prey upon children in the future, having previously circumvented a background check in obtaining the employment which led to his commission of the present offenses. Had the plea agreement involved a guilty plea to one or more of the charged offenses which was listed in Code section 39-13-524, and had the sentence length not otherwise exceeded the statutory maximum, the plea agreement would have been within the parameters of the Sentencing Act and, therefore, legal. As it exists, however, the plea agreement contained an illegal provision by requiring community supervision for life.

Rule 36.1(c)(3)(C) provides that if a material component of a plea agreement is illegal, a defendant may withdraw his guilty plea. However, if the defendant does not desire to withdraw the guilty plea, the trial court must grant the Rule 36.1 motion and enter an amended judgment reflecting the correct sentence. *See* Tenn. R. Crim. P. 36.1(c)(3)(C). Defense counsel indicated at the hearing that the Defendant did not wish to withdraw his guilty plea and that he sought entry of amended judgments which omitted the illegal provision requiring community supervision for life. On the facts of the present case, this is the appropriate remedy, despite the evidence of the parties' intent at the time the agreement was reached to include community supervision for life in the agreed-upon sentence.

The trial court erred in denying the Defendant's Rule 36.1 motion. We reverse its judgment, and the case is remanded for entry of corrected judgments of conviction which omit the community supervision for life requirement.

_____
ROBERT H. MONTGOMERY, JR., JUDGE