IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 7, 2023

**JAMES MOORE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County
No. 19-05109, C1907079   James Jones, Jr., Judge**

_____

**No. W2022-01785-CCA-R3-PC**
_____

The Petitioner, James Moore, was convicted by a Shelby County jury of attempted first degree murder and employing a firearm during the commission of a dangerous felony, for which he received an effective sentence of twenty-six years' imprisonment. He now appeals the post-conviction court's denial of relief, arguing that trial counsel was ineffective by failing to: (1) subpoena records that might have shown the victim's intoxication; and (2) adequately advise the Petitioner about testifying. Alternatively, he argues that the cumulative effect of trial counsel's deficiencies entitles him to relief. After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, P.J., delivered the opinion of the court, in which JILL BARTEE AYERS and JOHN W. CAMPBELL, SR., JJ., joined.

W. Price Rudolph, Memphis, Tennessee, for the appellant, James Moore.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Steve Mulroy, District Attorney General; and Regan Murphy, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On May 2, 2019, the Petitioner approached the victim outside of a nightclub and shot him six times. See State v. Moore, No. W2020-00641-CCA-R3-CD, 2021 WL 1832142, at *1 (Tenn. Crim. App. May 7, 2021), no perm. app. filed. The victim and the Petitioner had been friends for nearly fifteen years, but had a "falling out" a few months before the shooting over the Petitioner's use of the victim's car. Id. The victim testified

at trial that prior to the shooting, he saw the Petitioner inside of the nightclub. As the victim was leaving, he heard someone call out to him twice. He turned and saw the Petitioner standing a few feet away. The Petitioner shot him, but he survived. He told police the Petitioner was the shooter and identified the Petitioner both in a pre-trial photo array and at trial. The Petitioner was convicted of attempted first degree murder and employing a firearm during the commission of a dangerous felony.

After this court affirmed the Petitioner's convictions, he filed a petition for post-conviction relief alleging that he was denied the effective assistance of counsel. The post-conviction court held an evidentiary hearing on November 3, 2022. At the hearing, trial counsel and the Petitioner testified. The proof relevant to the issues raised in this appeal is outlined below.

Trial counsel testified that he was admitted to practice law in 2015 and exclusively practiced criminal defense. The Petitioner's case, however, was his first jury trial. Prior to trial, he met with the Petitioner at least eight times. His trial strategy included presenting an alibi defense, in conjunction with a misidentification defense. The Petitioner maintained that he was with Kionna Graham driving to Texas to see his uncle when the shooting occurred. The Petitioner said a few other people were also in the car, but he could not recall their names. He also could not recall his uncle's name, or where his uncle lived. The Petitioner told counsel he could not remember much about the trip because he rode in the backseat and consumed alcohol.

Trial counsel said he spoke with Graham three to five times. Graham said she went to Texas with the Petitioner to see the Petitioner's uncle. They stopped in San Antonio to visit her cousin, but she could not provide her cousin's name. Trial counsel asked both the Petitioner and Graham for information to help corroborate the Petitioner's alibi such as stops they made along the drive, debit card purchases, and phone calls placed but neither provided any information. On the Monday before trial, Graham "changed her attitude a little bit about whether she wanted to testify." She told counsel the other people in the car were the Petitioner's friends and she could not remember their names. She said the Petitioner was the driver. She said she did not want to testify, but she was willing to if she absolutely had to. Before the trial began, counsel told the Petitioner that he "was not very optimistic about [Graham] testifying" based on "the inconsistent information." He "got the sense that [he] was going to be putting someone up there that was going to commit perjury," so he and the Petitioner agreed that she would not testify.

Trial counsel said he and the Petitioner were initially hoping the Petitioner would testify. Counsel thought the Petitioner "would come across [as] likeable to the jury," and he had no criminal record. They had discussed the benefits and risks of the Petitioner testifying and the kinds of questions he would be asked. When the Petitioner still had not

provided details about his alibi the week before trial, however, counsel began to change his mind about his recommendation that the Petitioner testify. After they decided Graham would not be testifying, counsel recommended that the Petitioner not testify. He told the Petitioner it was the Petitioner's choice whether to testify, but testifying about his alibi without Graham and without any specific details about the trip to Texas would not "be very impactful." Counsel said the Petitioner "wasn't going to be able to answer any questions and it would look very, very bad to the jury." The Petitioner did not testify, and the defense presented no proof at trial.

Trial counsel testified that without the alibi defense, he was left with only a misidentification defense. Counsel intended to cast doubt on the victim's identification of the Petitioner based on the victim's intoxication, but expressed doubts about the persuasiveness of this strategy given that the victim "knew [the Petitioner] well." Counsel reviewed the preliminary hearing and learned that the victim admitted to consuming "a double shot of Jack" the night he was shot. Counsel did not try to subpoena medical records to determine the victim's level of intoxication because the State said they would share the records when they received them. The State provided approximately 1,300 pages of records the Friday before trial. Page 713 referenced a toxicology report, but no such report was in the records. Counsel asked the trial court for a continuance, which the court denied. When asked why he did not try to get the records himself earlier, counsel responded, "inexperience." Counsel said he did not try to determine the victim's intoxication level through other means such as witness interviews, credit card records, or video footage from the nightclub. Counsel's efforts were largely focused on trying to obtain proof to corroborate the Petitioner's alibi.

On cross-examination, trial counsel emphasized that his supervisor, who had done at least one hundred trials, assisted him in preparing for trial and was present at the trial. Counsel said that, because the alibi defense fell apart on the Monday before trial, he did not have much time to consider any other strategies. He said that the medical records said a toxicology report was completed, but they did not say whether it "had come back." According to the affidavit presented at trial, the records provided were complete. He did cross-examine the victim at trial about his intoxication the night of the shooting, and the victim admitted that he had been drinking, but denied being intoxicated.

The Petitioner testified that he told trial counsel that he went to Texas the day of the shooting, but he never said he was drinking. The Petitioner did not remember where he went in Texas or anywhere he stopped. He knew the names of the other people in the car with him, but he did not provide their names to counsel because they did not want to testify. The only information he provided counsel that could assist in his defense was Graham's information. He expected Graham to testify at trial, and said counsel did not advise him how not presenting Graham's testimony might affect the outcome of his case. Counsel did

not tell him that Graham decided not to testify, and he thought Graham was going to be at trial.

The Petitioner said trial counsel "sort of" talked to him about testifying. He thought counsel told him not to testify before trial. Counsel told him that he had a right to testify, but he did not tell him that the judge would instruct the jury that they could not hold his failure to testify against him. After the State concluded its proof at trial, counsel did not talk to him about his option to testify, advise him whether he should testify, or prepare him for the Momon hearing.

On cross-examination, the Petitioner said he did not tell trial counsel the names of the people that went to Texas with him because the people were threatening him and his family. He said he also knew his uncle's name but did not tell trial counsel because his uncle did not want to come to court. He initially refused to provide his uncle's name at the evidentiary hearing, but eventually said it was Pete Knox. He said that knowing what he knows now, he would have testified at trial and told the jury he was on his way to Texas when the shooting occurred.

The post-conviction court filed a written order denying the petition for post-conviction relief on December 15, 2022. The court found that trial counsel's alleged failures were neither deficient, nor prejudicial. In regards to the records, the court noted that the nightclub records could not themselves prove the intoxication level of the victim. The court then found that because the records that trial counsel failed to subpoena were not provided at the hearing, the Petitioner could not demonstrate any prejudice. In regards to the Petitioner's trial testimony, the court noted that trial counsel testified that he did adequately advise the Petitioner about testifying. The court found that "[b]ased [on] the lack of alibi and the lack of memory, counsel discouraged the Petitioner from testifying, but told the Petitioner that ultimately it was his decision[.]" The court found that counsel's assessment that the Petitioner's testimony would have been more harmful than helpful was a reasonable strategic decision and therefore not ineffective. Regardless, the Petitioner could not establish prejudice because "[i]t appears from [the] [P]etitioner's own testimony that he would not have provided any information during trial that would have supported in any way the supposed alibi defense or . . . any other form of defense[.]" The court also denied relief based on cumulative error, stating that it "finds no merit to the arguments presented by [the] Petitioner individually or collectively." The Petitioner filed a timely notice of appeal.

## ANALYSIS

The Petitioner argues that he was denied the effective assistance of counsel when trial counsel failed to: (1) subpoena the victim's medical records; (2) subpoena business

records from the nightclub where the shooting occurred; and (3) adequately advise the Petitioner about testifying. Alternatively, he argues that he is entitled to relief under the cumulative error doctrine. The State responds, and we agree, that the Petitioner has failed to show that trial counsel was ineffective.

A claim for post-conviction relief based on alleged ineffective assistance of counsel presents mixed questions of law and fact. Mobley v. State, 397 S.W.3d 70, 80 (Tenn. 2013) (citing Calvert v. State, 342 S.W.3d 477, 485 (Tenn. 2011)). We review the post-conviction court's conclusions of law de novo, with no presumption of correctness. Id. The post-conviction court's findings of fact, however, are conclusive on appeal unless the evidence preponderates against them. Calvert, 342 S.W.3d at 485 (citing Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)). "Accordingly, appellate courts are not free to re-weigh or re-evaluate the evidence, nor are they free to substitute their own inferences for those drawn by the post-conviction court." Whitehead v. State, 402 S.W.3d 615, 621 (Tenn. 2013) (citing State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001)).

The right to effective assistance of counsel is protected by both the United States Constitution and the Tennessee Constitution. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that: (1) his lawyer's performance was deficient; and (2) the deficient performance prejudiced the defense. Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Id.

In assessing an attorney's performance, we "must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462 (citing Strickland, 466 U.S. at 689). In addition, we must avoid the "distorting effects of hindsight" and must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 689-90. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of

circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Id. at 688-89. However, "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

I. **Failure to Subpoena Records**.[1]  The Petitioner argues that trial counsel's failure to subpoena the victim's medical records and the nightclub's business records was deficient.  He contends that the victim's toxicology report and the nightclub's credit card records could have shown that the victim was heavily intoxicated when he was shot and therefore cast doubt on the credibility of his identification of the Petitioner.  The State responds that counsel's failure to subpoena the records was reasonable because: (1) the State already subpoenaed the victim's medical records and agreed to provide them to counsel; and (2) the nightclub's records would show how much alcohol the victim purchased, not consumed.  The State also contends that the Petitioner cannot demonstrate prejudice because the Petitioner failed to present either record at the evidentiary hearing.

The Petitioner failed to establish that trial counsel's failure to subpoena records was deficient.  First, counsel's decision not to independently subpoena the victim's medical records was not deficient because the State agreed to provide counsel the records when they received them.  We note that trial counsel did attempt to obtain the records.  The State provided 1,300 pages of records the Friday before trial, and trial counsel asked for a continuance which was denied.  There is no proof that counsel could have received the records earlier if he had subpoenaed them himself.  Second, counsel's failure to subpoena the nightclub's records was not deficient because, though the records may have shown that the victim purchased alcohol, counsel's strategy was to demonstrate the victim's intoxication by other, more direct means—the victim's own admission that he consumed alcohol the night he was shot, and his medical records.  Therefore, his failure to subpoena records did not fall "below an objective standard of reasonableness under prevailing professional norms." See Goad, 938 S.W.2d at 369.

The Petitioner also failed to establish that trial counsel's failure to subpoena records was prejudicial.  A petitioner generally cannot establish that the failure to subpoena and present documents was prejudicial unless the petitioner presents the documents at the post-conviction hearing.  Pilate v. State, No. W2017-02060-CCA-R3-PC, 2018 WL 3868484, at *5 (Tenn. Crim. App. Aug. 14, 2018), perm. app. denied (Tenn. Dec. 6, 2018).  Without the toxicology report or nightclub records, we cannot speculate whether such records exist, or whether they would have shown that the victim was highly intoxicated when he was shot.  Even if the records did show the victim's intoxication, the Petitioner cannot establish

---

[1] We have combined the Petitioner's first and second issues.

a reasonable probability that the result of the proceeding would have been different. Because the victim had been friends with the Petitioner for fifteen years, we are not persuaded that the victim's intoxication could have cast sufficient doubt on the victim's identification. Accordingly, the Petitioner is not entitled to relief.

**II. Failure to Adequately Advise**. The Petitioner argues that trial counsel's failure to "adequately explain to [him] the pros and cons of testifying at trial" and failure to "strongly [encourage] [him] to testify" was ineffective. He contends that had he been advised adequately, he would have testified that he was not in Memphis when the shooting occurred and there is a reasonable probability the jury would have acquitted him. The State responds that counsel's advice was reasonable, and there is no reasonable probability that the Petitioner's testimony would have changed the outcome of the trial.

The Petitioner has not established that trial counsel was ineffective. The evidence supports the post-conviction court's finding that counsel discouraged the Petitioner from testifying based on the Petitioner's lack of memory of his trip to Texas, but told the Petitioner it was ultimately his decision. Trial counsel testified that he explained the benefits and risks of testifying to the Petitioner and discussed questions he may be asked. He advised the Petitioner not to testify because he was unable to answer any questions about his trip to Texas. Counsel's actions, therefore, were not deficient. Additionally, the Petitioner suffered no prejudice. The record supports the court's finding that had the Petitioner testified, "he would not have provided any information during trial that would have supported in any way the supposed alibi defense or . . . any other form of defense[.]" There was no proof that the Petitioner went to Texas besides his own testimony. Though counsel believed the Petitioner "would come across [as] likeable to the jury," the Petitioner could not provide any details about his trip to Texas and would not have been able to answer questions on cross-examination. The Petitioner did not remember where he went in Texas or anywhere he stopped along the way, and refused to provide the names of the people that went with him. There is no reasonable probability that this vague alibi assertion would have changed the result of the trial given that the victim, who had been friends with the Petitioner for fifteen years, identified the Petitioner as the perpetrator. Accordingly, the Petitioner is not entitled to relief.

**III. Cumulative Error**. Alternatively, the Appellant argues that the cumulative effect of trial counsel's deficiencies entitles him to relief. The State responds that the Petitioner is not entitled to relief because he has not shown that trial counsel was deficient. The cumulative error doctrine applies when "multiple errors [were] committed in trial proceedings, each of which in isolation constitutes mere harmless error, but when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial." State v. Hester, 324 S.W.3d 1, 76

(Tenn. 2010). Because none of trial counsel's alleged errors constituted deficient performance, the cumulative error doctrine does not apply.

## **CONCLUSION**

Based on the above reasoning and authority, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. MCMULLEN, PRESIDING JUDGE